Javier L. Merino
**DANN LAW**
372 Kinderkamack Road, Suite 5
Westwood, NJ 07675
Phone: (216) 373-0539
Fax: (216) 373-0536
notices@dannlaw.com

[Additional counsel listed on signature page]

*Counsel for Plaintiffs and the Putative Classes*

**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **CODY PEPPER, TERRI PEPPER, JULIUS BRYANT, KIMBERLY HUDSON, DEMYA JOHNSON,** and **ALLISON POWERS**, individually, and on behalf of all others similarly situated,<br><br>      Plaintiffs,<br><br>  v.<br><br>**FLUENT, INC.** and **REWARD ZONE USA, LLC,**<br><br>      Defendants. | Civil Action No.<br><br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY DEMAND ENDORSED HEREIN** |

      Plaintiffs CODY PEPPER, TERRI PEPPER, JULIUS BRYANT, KIMBERLY HUDSON, DEMYA JOHNSON, and ALLISON POWERS, individually, and on behalf of all others similarly situated ("Plaintiffs") for their Class Action Complaint against Defendants FLUENT, INC. and REWARD ZONE USA, LLC (collectively, "Defendants"), allege, based upon personal knowledge with respect to their own experiences, and on information, belief, investigation of counsel, and review of public documents as to all other matters, as follows:

## NATURE OF THE ACTION

1.      This is a nationwide consumer class action against Defendants for sending unsolicited telemarketing text messages to consumers' residential and cellular telephones registered on the National Do Not Call Registry in violation of 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200 using automatic telephone dialing systems ("ATDS") and artificial or prerecorded voices in violation of 47 U.S.C.§ 227(b).

2.      Plaintiff Allison Powers also asserts violations of North Carolina state law prohibitions against unfair and deceptive practices in telemarketing, N.C. Gen. Stat. §§ 75-100, *et seq.*

3.      Plaintiffs Terri Pepper, Julius Bryant, and Kimberly Hudson also assert violations of Texas state law prohibitions against unfair and deceptive practices in telemarketing, Tex. Bus. and Comm. Code §§ 301.001, *et seq.*

4.      Plaintiff Cody Pepper also asserts violations of Washington state law prohibitions against unfair and deceptive practices in telemarketing, Wash. Stat. § 19.160.010, *et seq.*, Wash. Stat. § 19.86.010, *et seq.*, and Wash. Stat. § 80.36.005, *et seq.*

5.      Defendants did not obtain the prior express consent of Plaintiffs or Class members before sending the unsolicited text messages that form the basis for Defendants' liability.

6.      Furthermore, Plaintiffs Cody Pepper, Bryant, Hudson, Johnson, and Powers and members of the Do Not Call Classes defined below were registered on the National Do Not Call Registry when the violative text messages were sent.

7.      Plaintiffs bring this lawsuit to recover their damages and obtain redress on behalf of themselves and Classes of similarly situated individuals who were and are being targeted by

Defendants' relentless barrage of automated—and oftentimes deceptive—telemarketing text messages.

## PARTIES, JURISDICTION, AND VENUE

8.     Plaintiff Cody Pepper ("Cody Pepper") is a citizen of Washington.

9.     Cody Pepper has registered his residential cellular phone number ending in 4946 on the National Do Not Call Registry since April 4, 2010.

10.    Plaintiff Terri Pepper ("Terri Pepper") is a citizen of Texas.

11.    Terri Pepper has registered her residential cellular phone number ending in 0401 on the National Do Not Call Registry since December 15, 2004.

12.    Plaintiff Julius Bryant ("Bryant") is a citizen of Texas.

13.    Bryant has registered his residential cellular phone number ending in 7782 on the National Do Not Call Registry since March 31, 2019.

14.    Plaintiff Kimberly Hudson ("Hudson") is a citizen of Texas.

15.    Hudson has registered her residential cellular phone number ending in 2672 on the National Do Not Call Registry since July 12, 2003.

16.    Plaintiff DeMya Johnson ("Johnson") is a citizen of Alabama.

17.    Johnson has registered her residential cellular phone number ending in 8330 on the National Do Not Call Registry since December 16, 2019.

18.    Plaintiff Allison Powers ("Powers") is a citizen of North Carolina.

19.    Powers has registered her residential cellular phone number ending in 9718 on the National Do Not Call Registry since November 17, 2007.

20.    Defendant Fluent, Inc. ("Fluent") is a Delaware corporation with its principal place of business at 300 Vesey St., 9th Floor, New York, New York 10282.

21.     Defendant Reward Zone USA, LLC ("Reward Zone") is a Delaware limited liability company with its principal place of business at 128 Court Street, 3rd Floor, White Plains, New York 10601. Fluent owns 100% of Reward Zone.

22.     The Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. § 227.

23.     This Court has personal jurisdiction over Defendants because they maintain their principal places of business in this District, are at home in this District, and they conducted a significant amount of business in this District, solicited consumers in this District, and continue to direct, oversee, and engage in the complained of activity within this District.

24.     Venue is proper in this District under 28 U.S.C. § 1391(b)(1) because each Defendant resides in this District and this Court has personal jurisdiction over each Defendant.

## DEFENDANTS' BUSINESS PRACTICES

25.     Defendants' digital marketing and advertising services to businesses include selling consumers' information to use for advertising purposes.

26.     Fluent also provides services for political advocacy groups for which it recently paid a $4 million fine to the Attorney General of New York ("NYAG") for using real consumers' identities to generate completely fabricated comments in support of repealing net neutrality in 2017.[1]

27.     Fluent bills itself as a "performance-based" marketing company.

28.     According to its Shareholders' Annual Report for 2020, Fluent "primarily perform[s] customer acquisition services by operating highly scalable digital marketing campaigns

---

[1] *In re James v. Fluent, Inc.*, Assurance No. 21-027 (May 6, 2021).

through which [it] connects [its] advertiser clients with consumers they are seeking to reach." Fluent SEC Form 10-K, page 1 (Mar. 16, 2021).

29.     To generate leads for their business clients, Defendants employ a business model known as co-registration, where consumers are sent advertisements and solicitations in the guise of incentives—often illusory—such as gift cards and sweepstakes entries to entice them into providing answers to survey questions that provide Defendants with their consumer and personal information.

30.     Typically, a consumer who finds himself or herself at a landing page of one of Defendants' many websites—after clicking on an oftentimes deceptive link contained in one of Defendants' unsolicited text messages—is promised a specific incentive or reward, such as a gift card or free merchandise, upon the completion of "purchase requirements," like buying a completely different product or answering questions.

31.     Consumers who respond to Defendants' offers are in for a wild goose chase.

32.     According to findings of the NYAG, the NYAG investigator had to navigate through 75 webpages during this process.

33.     In the course of navigating through all of these pages, consumers are presented with so-called deals for products and merchandise of Defendants' clients other than the originally promised merchandise or reward.

34.     Typically, consumers must create an account, subscribe, or enroll in other goods or services in order to have a chance to obtain the originally promised incentive.

35.     Defendants' websites are designed with a "mobile first" approach.

36.     To get as many consumers as possible to land on Defendants' webpages, Defendants deploy short message service/multimedia messaging service ("SMS/MMS" or "text messages") to consumers' cellular telephones.

37.     According to Twilio, open rates for SMS marketing were around 82% in 2017.

38.     Consumers clicked through to links in text messages at a 36% rate on average. *See* https:// www.twilio.com/learn/call-and-text-marketing/sms-marketing-vs-email (last visited May 25, 2021).

39.     Fluent reports that "approximately 90% of its users engage with [its] media on their mobile devices or tablets." *See* Fluent 2020 Annual Report, page 1.

40.     Defendants flagrantly disregard laws concerning privacy and telephone marketing solicitation.

41.     Defendants send text messages to consumers without prior express consent, often on fraudulent terms, such as misrepresenting the text message as a package tracking notification.

42.     This induces consumers to click on Internet links in the text message which automatically navigates their cellular telephone Internet browser to Defendants' landing pages.

43.     Defendants targeted Plaintiffs in their unlawful scheme.

## DEFENDANTS SENT TELEMARKETING
## TEXT MESSAGES TO PLAINTIFFS WITHOUT PRIOR CONSENT

### *Plaintiff Terri Pepper*

44.     On August 20, 2020, at 9:59 a.m., Terri Pepper's phone number ending in 0401 received the following text purportedly originating from cashappalertskbfkyf@thzukj.com: "$750 Cash-App-Transfer is pending your confirmation thzukj.com/8066830401nkcosba."

45.     At or around the time the text message was sent, clicking on the link caused one's smartphone to open an Internet browser page and navigate automatically to promotionsonlineusa.com, a Reward Zone website.

46.     Defendants did not obtain Terri Pepper's prior express consent before sending this text message.

### *Plaintiff Cody Pepper*

47.     On January 14, 2020, at 5:48 a.m., Cody Pepper's phone number ending in 4946 received the following text purportedly originating from (760) 963-3611: "Amazon 2020 resolutions: 1) not to be greedy 2) care more about the customers. So you'll get $130 freebies to do a survey TERRI -> a8vrm.info.SRbTldZ1eEZ."

48.     On January 15, 2020, at 6:53 p.m., Cody Pepper's phone number ending in 4946 received the following text purportedly originating from (831) 620-9366: "Hello TERRI, your FEDEX package with tracking code GB-6412-GH83 is waiting for you to set delivery preferences: b7cne.info/p4AnWKmSAsV."

49.     On September 26, 2020, at 9:56 a.m., Cody Pepper's phone number ending in 4946 received the following text purportedly originating from (347) 225-4612: "Fanta, final notice about the USPS shipment 3D56R5 from 07/14/2020. Click sj1v.info/PhlJ11CHRu."

50.     At or around the time the text message was sent, clicking on the link caused one's smartphone to open an Internet browser page and navigate automatically to Enteprize.com which, by navigating to other pages using hyperlinks and responding to prompts, eventually directed the consumer to retailproductsusa.com, a Reward Zone website.

51.     On September 30, 2020, at 10:18 a.m., Cody Pepper's phone number ending in 4946 received the following text purportedly originating from (646) 328-8703: "Fanta, your regular Netflix payment is on hold: te5n.info/iUfnDc3Byr."

52.     At or around the time the text message was sent, clicking on the link caused one's smartphone to open an Internet browser page and navigate automatically to rewardsproven.com which, by navigating to other pages using hyperlinks and responding to prompts, eventually directed the consumer to promotionsonlineusa.com, a Reward Zone website.

53.     Defendants did not obtain Cody Pepper's prior express consent before sending these text messages.

### *Plaintiff Julius Bryant*

54.     On April 30, 2020, at 1:03 p.m., Bryant's phone number ending in 7782 received the following text from the number purporting to be (281) 972-5614: "Congratulations Five of you received $500 gift card from Walmart. Claim it at giftcars.us T4 Thursday 1:03 p.m."

55.     At or around the time the text message was sent, clicking on the link caused one's smartphone to open its Internet browser and navigate automatically to promotionsonlineusa.com, a Reward Zone website.

56.     On May 12, 2020, at 3:47 p.m., Bryant's phone number ending in 7782 received the following text from the number purporting to be (346) 347-7886: "One package is available for shipment…Confirm delivery-address http://bg.totaltrack6.us/xhnft/bnFHKdP here."

57.     At or around the time the text message was sent, clicking on the link caused one's smartphone to open an Internet browser page and navigate automatically to Joysurveys.com which, by navigating to other pages using hyperlinks and responding to prompts, eventually directed the consumer to promotionsonlineusa.com, a Reward Zone website.

58.     Defendants did not obtain Bryant's prior express consent before sending these text messages.

### *Plaintiff Kimberly Hudson*

59.     On June 6, 2020, at 12:26 p.m., Hudson's phone number ending in 2672 received the following text from the number purporting to be (657) 368-9881: ALERT: Kimberly, please check the details for shipment ID: AmazonRewards 4G5sR3 here: g7smv.info/G6i7EP499d Package: $110 goodies."

60.     At or around the time the text message was sent, clicking on the link caused one's smartphone to open an Internet browser page and navigate automatically to todaysnewcustom.com which, by navigating to other pages using hyperlinks and responding to prompts, eventually directed the consumer to promotionsonlineusa.com, a Reward Zone website.

61.     On June 21, 2020, at 1:37 p.m., Hudson's phone number ending in 2672 received the following text from the number purporting to be (714) 552-2357: "Kohls ALERTS: not $129, but for FREE! That's the Kohl's deal of the week: h6smz.info/n7rJp9kYFi."

62.     At or around the time the text message was sent, clicking on the link caused one's smartphone to open an Internet browser page and navigate automatically to program.mynewrewto.com which, by navigating to other pages using hyperlinks and responding to prompts, eventually directed the consumer to promotionsonlineusa.com, a Reward Zone website.

63.     On September 9, 2020, at 11:04 a.m., Hudson's phone number ending in 2672 received the following text from the number purporting to be (302) 423-3111: "Kimberly, final notice for the USPS shipment 5l77D1 from 05/21/2020. Go to: m5smz.info/RX7EDFhV2y."

64.     At or around the time the text message was sent, clicking on the link caused one's smartphone to open an Internet browser page and navigate automatically to enteprize.com which, by navigating to other pages using hyperlinks and responding to prompts, eventually directed the consumer to retailproductsusa.com, a Reward Zone website.

65.     On September 10, 2020, at 6:57 p.m., Hudson's phone number ending in 2672 received the following text from the number purporting to be (803) 436-9097: "Kimberly, urgent notice about the USPS shipment 1R56L8 from 07/20/2020. Go to: m6szv.info/Ek3HNighS."

66.     At or around the time the text message was sent, clicking on the link caused one's smartphone to open an Internet browser page and navigate automatically to enteprize.com which, by navigating to other pages using hyperlinks and responding to prompts, eventually directed the consumer to retailproductsusa.com, a Reward Zone website.

67.     On September 26, 2020, at 7:46 p.m., Hudson's phone number ending in 2672 received the following text from the number purporting to be (310) 561-5765: "Alejandra, urgent notice about your USPS shipment 5H32S4 from 06/15/2020. Proceed to sq2m.info/9FcacRuroR."

68.     At or around the time the text message was sent, clicking on the link caused one's smartphone to open an Internet browser page and navigate automatically to sprogram.ournewwayz.com which, by navigating to other pages using hyperlinks and responding to prompts, eventually directed the consumer to promotionsonlineusa.com, a Reward Zone website.

### ***Plaintiff DeMya Johnson***

69.     On May 9, 2020, at 11:15 a.m., Johnson's phone number ending in 8330 received the following text from the number purporting to be (949) 550-7289: "Important! DeMya, Seems

you didn't open the door when we tried to deliver your $1,000 Wal-Mart Shopping Cards. Click here to confirm cfc.info/9TsUNJqr3N."

70.     At or around the time the text message was sent, clicking on the link caused one's smartphone to open an Internet browser page and navigate automatically to promotionsonlineusa.com, a Reward Zone website.

71.     On May 14, 2020, at 12:21 p.m., Johnson's phone number ending in 8330 received the following text from the number purporting to be (714) 732-7713: "**Ben 800k cleaned Demya** – You WON! Please fill in your details here so you get your new iPhone 11 Pro Max right now bmgmg.info/mRtry8aKJT."

72.     At or around the time the text message was sent, clicking on the link caused one's smartphone to open an Internet browser page and navigate automatically to ftsts.info which, by navigating to other pages using hyperlinks and responding to prompts, eventually directed the consumer to promotionsonlineusa.com, a Reward Zone website.

73.     On May 19, 2020, 11:40 a.m., Johnson's phone number ending in 8330 received the following text from the number purporting to be (530) 680-7713: "Demya, here is your $1000 from Walmart to thank our customers! Fill in your details to receive the voucher immediately imgmg.info/nNfZDX8CrX."

74.     At or around the time the text message was sent, clicking on the link caused one's smartphone to open an Internet browser page and navigate automatically to rmgmg.info which, by navigating to other pages using hyperlinks and responding to prompts, eventually directed the consumer to promotionsonlineusa.com, a Reward Zone website.

75.     On September 2, 2020, at 4:23 p.m., Johnson's phone number ending in 8330 received the following text from the number purporting to be (478) 246-3692: "DeMya Johnson,

urgent notification about the USPS delivery A56A5 from 08/12/2020. Click: l8smk.info/GpHBnlfX0D."

76.     In response to the September 2, 2020 text, Johnson replied STOP.

77.     On November 30 2020, at 9:24 a.m., Johnson's phone number ending in 8330 received the following text from the number purporting to be (803) 307-9554: "Dear Demya, Y0UR ZANTAC PAY0UT: Collect You're Settlement Before Deadline 0n l2/04!: fz8c.info/jH7rJ46tCl."

78.     At or around the time the text message was sent, clicking on the link caused one's smartphone to open an Internet browser page and navigate automatically to surveysandpromoonline.com, a Reward Zone website.

79.     In response to the November 30, 2020 text, Johnson replied STOP.

80.     On December 23, 2020, at 11:28 a.m., Johnson's phone number ending in 8330 received the following text from the number purporting to be (803) 686-4049: "Thank you for being a loyal customer and paying your last months bill on time during these hard times, you deserve this jjmhb.me/wnNUm9zX4B."

81.     At or around the time the text message was sent, clicking on the link caused one's smartphone to open an Internet browser page and navigate automatically to chancetowins.com which, by navigating to other pages using hyperlinks and responding to prompts, eventually directed the consumer to retailproductsusa.com, a Reward Zone website.

82.     In response to the December 23, 2020 text, Johnson replied STOP.

83.     On December 24, 2020, at 10:08 a.m., Johnson's phone number ending in 8330 received the following text from the number purporting to be (214) 435-0037: "Thank you for

being a loyal customer and paying your last months bill on time during these hard times, you deserve this gift psoti.me/09vXGz3hP5."

84.     At or around the time the text message was sent, clicking on the link caused one's smartphone to open an Internet browser page and navigate automatically to chancetowins.com which, by navigating to other pages using hyperlinks and responding to prompts, eventually directed the consumer to promotionsonlineusa.com, a Reward Zone website.

85.     In response to the December 24, 2020 text, Johnson replied STOP.

86.     On March 15, 2021, 10:58 a.m., Johnson's phone number ending in 8330 received the following text from the number purporting to be (631) 310-7171: "ZANTAC NOTICE: We know you have used Zantac before and we are filing for classactions Secure your settlement and get your payout ASAP muov9.xyz/UQN0lw8zWd."

87.     At or around the time the text message was sent, clicking on the link caused one's smartphone to open an Internet browser page and navigate automatically to Benefits.benefit-relief.com which, by navigating to other pages using hyperlinks and responding to prompts, eventually directed the consumer to surveysandpromoonline.com, a Reward Zone website.

88.     In response to the March 15, 2021 text, Johnson replied STOP.

89.     On March 22, 2021, at 7:43 a.m., Johnson's phone number ending in 8330 received the following text from the number purporting to be (214) 914-9290: "Zntac has paid you ! Transaction Successful. Demya You have 24hrs to collect your payout. Collect it immediately peko.xyz/oX6lyDmjnX."

90.     At or around the time the text message was sent, clicking on the link caused one's smartphone to open an Internet browser page and navigate automatically to Benefits.legalactionfinder.com which, by navigating to other pages using hyperlinks and

responding to prompts, eventually directed the consumer to surveysandpromoonline.com, a Reward Zone website.

91.     In response to the March 22, 2021 text, Johnson replied STOP.

92.     On April 12, 2021, at 8:35 a.m., Johnson's phone number ending in 8330 received the following text from the number purporting to be (619) 854-0838: "Hello Demya, your CVS voucher (ID #004tj2j) expired today. (179USD) You can still redeem 90% of the value if you now. mjpf3.xyz/9LrfgmT7m."

93.     At or around the time the text message was sent, clicking on the link caused one's smartphone to open an Internet browser page and navigate automatically to homeinfoclub.com which, by navigating to other pages using hyperlinks and responding to prompts, eventually directed the consumer to surveysandpromoonline.com, a Reward Zone website.

94.     In response to the April 12, 2021 text, Johnson replied STOP.

95.     On April 13, 2021, at 6:46 a.m., Johnson's phone number ending in 8330 received the following text from the number purporting to be (323) 541-7897: "PAYMENT Successful: Zntac has paid you Transaction ready. Demya You have 24hrs to collect your payout. Collect it immediately iwng7.xyz/s1OQQfiAJu."

96.     At or around the time the text message was sent, clicking on the link caused one's smartphone to open an Internet browser page and navigate automatically to benefits.legalactionfinder.com which, by navigating to other pages using hyperlinks and responding to prompts, eventually directed the consumer to surveysandpromoonline.com, a Reward Zone website.

97.     In response to the April 13, 2021 text, Johnson replied STOP.

98.     On April 16, 2021, at 7:05 a.m., Johnson's phone number ending in 8330 received the following text from the number purporting to be (619) 705-8804: "-Settlement finalized- a Zntac settlement has been confirmed. Compensation pool of 1.2BN USD Demya apply now to receive your share hkgf2.xyz/aJG7cUD6l7."

99.     At or around the time the text message was sent, clicking on the link caused one's smartphone to open an Internet browser page and navigate automatically to benefits.legalactionfinder.com which, by navigating to other pages using hyperlinks and responding to prompts, eventually directed the consumer to surveysandpromoonline.com, a Reward Zone website.

100.    In response to the April 16, 2021 text, Johnson replied STOP.

101.    On April 22, 2021, at 2:03 p.m., Johnson's phone number ending in 8330 received the following text from the number purporting to be (972) 742-1016: "AMAZON PAYMENT: We have added 149 USD to your virtual account! Your updated balance can be found here: ljbf9.xyz/Um9PlxoZv7."

102.    At or around the time the text message was sent, clicking on the link caused one's smartphone to open an Internet browser page and navigate automatically to Benefits.legalactionfinder.com which, by navigating to other pages using hyperlinks and responding to prompts, eventually directed the consumer to surveysandpromoonline.com, a Reward Zone website.

103.    In response to the April 22, 2021 text, Johnson replied STOP.

104.    On April 26, 2021, at 5:46 a.m., Johnson's phone number ending in 8330 received the following text from the number purporting to be (302) 563-5953: "PAYOUT APPROVED!

Demya we are happy to let you know that your compensation is available upon request: jlbl4.xyz/rfrASZo9dl."

105.    At or around the time the text message was sent, clicking on the link caused one's smartphone to open an Internet browser page and navigate automatically to Benefits.legalactionfinder.com which, by navigating to other pages using hyperlinks and responding to prompts, eventually directed the consumer to surveysandpromoonline.com, a Reward Zone website.

106.    In response to the April 26, 2021 text, Johnson replied STOP.

107.    On May 21, 2021, at 6:18 a.m., Johnson's phone number ending in 8330 received the following text from the number purporting to be (718) 207-7576: "AHR Has paid you Demya. Your payout has been accepted by American Hope Resources! Check how much you will be paid here: vwgu9.xyz/mvNtWfk0lc."

108.    In response to the May 21, 2021 text, Johnson replied STOP.

109.    On May 22, 2021, at 7:54 a.m., Johnson's phone number ending in 8330 received the following text from the number purporting to be (239) 216-7933: "Hey Demya its Cassidy from Walmart Guess what? The unique code 2851 printed on your receipt from Last Month came 1st! evjh2.xyz/rjMhWjhAqH."

110.    At or around the time the text message was sent, clicking on the link caused one's smartphone to open an Internet browser page and navigate automatically to members.mobile-rewards.online which, by navigating to other pages using hyperlinks and responding to prompts, eventually directed the consumer to promitionsonlineusa.com, a Reward Zone website.

111.    In response to the May 22, 2021 text, Johnson replied STOP.

112.    On June 1, 2021, at 5:27 a.m., Johnson's phone number ending in 8330 received the following text from the number purporting to be (913) 645-1676: "HI Demya Why haven't you activated your $199 Walmart giftcard printed on your receipt on 02/10? It expires in 24 hrs. Activate now: 2negsqf.lagv3.xyz/AZir."

113.    At or around the time the text message was sent, clicking on the link caused one's smartphone to open an Internet browser page and navigate automatically to luckywinnersgo.com which, by navigating to other pages using hyperlinks and responding to prompts, eventually directed the consumer to electronicpromotionsusa.com, a Reward Zone website.

114.    In response to the June 1, 2021 text, Johnson replied STOP.

115.    Defendants did not obtain Johnson's prior express consent before sending these text messages.

116.    Defendants unlawfully continued to text Johnson after Johnson replied STOP.

117.    Defendants continue to unlawfully send text messages to Johnson despite her numerous requests that the text messages cease.

118.    Defendants unlawfully texted Johnson outside permissible hours.

### *Plaintiff Allison Powers*

119.    On October 29, 2020, at 6:43 p.m., Powers' phone number ending in 9718 received the following text purportedly from the number (332) 234-2199: "FEDEX – shipment 15358 notification: shipped.  Review> f3gcv.info/2H2Lu39ZAP."

120.    At or around the time the text message was sent, clicking on the link caused one's smartphone to open an Internet browser page and navigate automatically to angelprize.com which, by navigating to other pages using hyperlinks and responding to prompts, eventually directed the consumer to promotionsonlineus.com, a Reward Zone website.

121.    Defendants did not obtain Powers' prior express consent before sending this text message.

## DEFENDANTS' LIABILITY FOR THE TELEMARKETING TEXT MESSAGES

122.    Defendants failed to obtain prior express consent—written or otherwise—to send the texts alleged above. Prior express written consent is required for telemarketing text messages. Prior express written consent is defined as:

> [A]n agreement in writing, bearing the signature of the person called that clearly authorized the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisement or telemarketing messages to be delivered.

> 47 C.F.R. § 64.1200(f)(9).

123.    Defendants used an automatic telephone dialing system, as that term is defined under 47 U.S.C. § 227(a)(1), when they sent the robotexts to Plaintiffs and the Class members.

124.    Defendants, through their own acts and through persons whose acts are attributed and imputed to Defendants, including through principles of direct liability and vicarious liability, used equipment which has the "capacity to use a random or sequential number generator to either store or produce phone numbers to be called." *Facebook, Inc. v. Duguid*, 141 S. Ct. 1163, 1173 (2021).

125.    Defendants sent the text messages using messaging platforms capable of transmitting thousands of automated text messages without any human involvement. The text message platforms used by Defendants had and have the present capacity and actually were used in one or more of the following ways: (1) to use a random or sequential number generator to produce telephone numbers to be dialed automatically; (2) to use a random or sequential number generator to store telephone numbers in the platform's database to be dialed at later time

automatically; (3) to use a random or sequential number generator to select the order and frequency in which telephone numbers are dialed; and (4) to generate telephone numbers in a sequential order and, through an automated process, combine prerecorded text message content with the telephone number and deliver such text messages in sequential order.

126.    In addition, Defendants used artificial or prerecorded voices to make the robotexts by embedding in the robotexts hyperlinks to Defendants' websites with prerecorded or artificial voices in videos, including the following video: https://youtu.be/x1-xocUFAFg which was viewable on promotionsonlineusa.com on May 24, 2021.

127.    47 C.F.R. § 64.1200(c)(1) prohibits telephone solicitations before 8:00 a.m. or after 9 p.m. local time.

128.    Defendants repeatedly violated this rule.

129.    47 C.F.R. § 64.1200(c)(2) prohibits telephone solicitations to telephone numbers on the National Do Not Call Registry.

130.    Defendants repeatedly violated this rule.

131.    Text messages, such as the ones made by Defendants, are subject to the TCPA. *See* Fed. Commc'ns Comm., Enforcement Advisory No. 2016-06, DA 16-1299, *Robotext Consumer Protection: Text Message Senders Must Comply With the Telephone Consumer Protection Act* (Nov. 18, 2016).

132.    Defendants are liable for each of the TCPA-violating text messages under one or more of the following theories of liability: (1) Direct Liability, (2) Actual Authority, (3) Apparent Authority, (4) Ratification, (5) Joint Enterprise, and (6) Acting in Concert.

## DIRECT LIABILITY

133.    Defendants' scheme involves the use of unlawful robotexting of advertising and promotional offers, as alleged herein, to advance their pecuniary or business interests.

134.    Defendants directly initiated the unlawful robotexts to Plaintiffs and the other Class members and are directly liable for violating the TCPA.

135.    The robotexts sent to Plaintiffs and Class members contained hyperlinks that either directly or indirectly, automatically connected consumers' cellular telephones to Defendants' websites. The content of Defendants' websites was embedded in each of the text messages sent to Plaintiffs and the other Class members. Defendants therefore initiated and made the text messages and are directly liable for their transmission to Plaintiffs and Class members.

136.    Defendants used artificial or prerecorded voices by delivering the content of the text message and the content of the embedded and hyperlinked websites, which contain prerecorded voices in videos including the following video: https://youtu.be/x1-xocUFAFg which was viewable on promotionsonlineusa.com on May 24, 2021.

## ACTUAL AUTHORITY

137.    The TCPA incorporates federal common law agency principles.

138.    To the extent Defendants outsource the act of executing the unlawful robotexts to third parties, such an act would not and does not absolve them from liability under the TCPA.

139.    On May 9, 2013, the FCC confirmed this principle in a Declaratory Ruling holding that sellers may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-

party telemarketers are identifiable, solvent, and amenable to judgment, limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "[s]ellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

*In the Matter of the Joint Petition Filed by Dish Network, LLC, the United States of Am., & the States of California, Illinois. N. Carolina, & Ohio for Declaratory Ruling Concerning the Tel. Consumer Prot. Act (TCPA) Rules*, 28 F.C.C. Rcd. 6574, 6588 (F.C.C. 2013) ("*Dish Network*").

140.   Defendants signed contracts with each other and with third parties, expressly authorizing and directing them to promote Defendants' websites and Defendants' clients' goods and services in accordance with specifications largely dictated by Defendants, but with certain unimportant or obvious aspects of the conduct unspoken.

141.   For example, Defendants may not have had control over the list of persons to whom texts would be sent and certain content of the messages.

142.   However, Defendants did not have to specify or direct the robocallers to send communications by text message because the robocallers were engaged in the business of sending robotexts to consumers.

143.   By signing contracts making the robocallers authorized agents—expressly or impliedly—to execute unlawful robotexts to Plaintiffs and Class members and to convey hyperlinks to Defendants' websites, Defendants are liable for violations of the TCPA.

144.   For the important details of the transactions, such as what website(s) to hyperlink, Defendants had control over the robocallers, but the robocallers may have had a range of discretion in deciding how to carry out the campaigns.

145.     That discretion was necessarily limited by implication, including the robocallers' economic incentive being tied to the open rate of text messages, the robocallers' business, and shared knowledge by Defendants and robocallers regarding what methods most effectively increase the open rates of text messages.

146.     Indeed, the FCC acknowledges that vicarious liability is imposed where the caller is "unsupervised." 28 F.C.C. Rcd. at 6588.

147.     During all relevant times, Defendants knew that the third persons were engaged in marketing practices constituting unlawful robotexting to direct traffic to Defendants' websites and Defendants' clients' products or services, in accordance with the specifications and contractual provisions agreed to by Defendants and the robocallers.

148.     Defendants accepted, did not object to, and benefitted from the robocallers' violations of the TCPA.

149.     Defendants directed and controlled the conduct of the robocallers by, *inter alia*, instructing and closely controlling the content of the robotexts and contacts with Plaintiffs and other robotext recipients, controlling and monitoring the timing, volume, direction, and manner of their conduct on behalf of Defendants, establishing and enforcing guidelines and specifications of the robocallers' activities on behalf of Defendants, retaining rights to modify, amend, or withdraw the robocallers' authority to act on behalf of Defendants in sending the unlawful robotexts, compensating the robocallers for engaging in conduct that violated the TCPA, knowing that the robocallers engaged in conduct that violated the TCPA or instructing them, impliedly or expressly, not to disclose information that, if known by Defendants, would establish Defendants' knowledge that the robocallers were engaged in conduct violating the TCPA, and providing feedback to the robocallers regarding changes in practices.

150.    Due to the anonymous nature of robotexting, Plaintiffs have no access to information to identify the exact relationship between Defendants and the robocallers who are the anonymous public facing arm of Defendants' unlawful robotexting scheme.

151.    However, Plaintiffs are not required to know this information at the pleading stage. *Dish Network* states that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." 28 F.C.C. Rcd., at 6592–93 (¶ 46).

## APPARENT AUTHORITY

152.    *Dish Network* further clarifies the circumstances under which a telemarketer has apparent authority:

> [A]pparent authority may be supported by evidence that the seller allows the [third party] access to information and systems that normally would be within the seller's exclusive control, including: access to detailed information regarding the nature and pricing of the seller's products and services or to the seller's customer information. The ability by the outside sales entity to enter consumer information into the seller's sales or customer systems, as well as the authority to use the seller's trade name, trademark and service mark may also be relevant. It may also be persuasive that the seller approved, wrote or reviewed the outside entity's telemarketing scripts. Finally, a seller would be responsible under the TCPA for the unauthorized conduct of a third-party telemarketer that is otherwise authorized to market on the seller's behalf if the seller knew (or reasonably should have known) that the telemarketer was violating the TCPA on the seller's behalf and the seller failed to take effective steps within its power to force the telemarketer to cease that conduct.

> 28 FCC Rcd. at 6592 (¶ 46).

153.    The integration of Defendants' websites with the robotexts used by the robocallers was so seamless that it appeared to Plaintiffs that Defendants and the robocallers were acting together as the same company.

154.    Defendants allowed the robocallers to enter consumer information into their systems as well as to use Defendants' website links and website content to send to consumers.

155.    Defendants gave the robocallers the authority to use their websites, hyperlinks, URLs, trade name, trademark, service mark, forms, contracts, and materials.

156.    The robocallers did not independently identify themselves to Plaintiffs and the other Class members or provide their contact information.

157.    Instead, at times the robocallers masqueraded as other actors, such as USPS or Amazon, to induce recipients to click on the hyperlink contained in the text message. However, once the link was clicked, Defendants' participation in the text message could be discovered upon investigation.

## **RATIFICATION**

158.    Defendants knowingly and actively accepted business and contacts with consumers that originated through TCPA-violating robotexts placed by the robocallers.

159.    Defendants ratified the robocallers' TCPA violations by knowingly accepting the benefit of new contacts with consumers despite the fact that these consumers were generated through conduct that violates the TCPA.

160.    Alternatively, Defendants ratified the robocallers' TCPA violations by knowing facts that would cause an ordinarily prudent person to inquire as to whether the robocallers were complying with the TCPA, or create reasonable suspicion that the robocallers do not comply with the TCPA, willfully turning a blind eye to those facts, and accepting the benefit of new consumer contacts despite the fact that they were generated through conduct that violates the TCPA.

161.    Defendants ratified the TCPA violations of the robocallers by being willfully ignorant of the violations or by being aware that such knowledge was lacking and accepting the benefits of the TCPA violations.

162.    Defendants have received numerous complaints regarding the conduct of the entities that send text messages on their behalf and Defendants refuse to alter their business practices at all in response.

163.    Defendants knew that the robocallers engaged in conduct that violated the TCPA and generated numerous consumer complaints because of their telemarketing practices, but failed to terminate their relationship with the robocallers and continued to do business with them.

164.    In the words of Fluent's General Counsel, Daniel Barsky, "It's important to understand how the backend really works, who is doing what, where the risks are and who should be responsible for that risk."[2]

165.    In addition, Fluent acknowledges on page 19 of its 2020 Annual Report that robocallers "may use unapproved marketing channels, such as SMS, to drive users to our sites, which may expose us to liability under the TCPA," and that Fluent "could be seen as responsible for this behavior."

166.    On January 28, 2020, Fluent was served with a Civil Investigative Demand from the Federal Trade Commission regarding "compliance with the FTC Act and the TSR [Telemarketing Sales Rule], as they relate to the advertising, marketing, promotion, offering for sale, or sale of rewards and other products, the transmission of commercial text messages, and/or consumer privacy or data security." Fluent 2020 Annual Report, page 8.

---

[2] https://www.vanguardlawmag.com/case-studies/dan-barsky-fluent-inc/ (last visited, May 24, 2021).

## JOINT ENTERPRISE

167.    Defendants and the robocallers had a tacit agreement, or approved of after the fact, for the marketing of Defendants' services by means that violate the TCPA, including sending robotexts to numbers registered on the National Do Not Call Registry and to cellular or other phone numbers using an ATDS or prerecorded or artificial voice, all without obtaining prior express consent to engage in such conduct.

168.    Defendants and the robocallers were part of a common enterprise and had a community of interest in marketing and promoting Defendants' websites, services, and products.

169.    Defendants and the robocallers had an equal right to control the conduct thereof by specifying the type of people to be texted, when to text, and what to say in the text messages.

170.    Defendants and the robocallers entered into an agreement on how the proceeds of the unlawful activities would be apportioned among them.

171.    Defendants and the robocallers are jointly and severally liable for the resulting damage caused by the robocallers' TCPA-violating conduct.

## ACTING IN CONCERT

172.    Defendants acted in concert with the robocallers when they sent robotexts in violation of the TCPA, as alleged herein.

173.    Defendants received the benefit of the consumer contacts generated by the robocallers.

174.    Defendants compensated the robocallers for engaging in conduct that violated the TCPA.

175.    Defendants and the robocallers agreed and were part of a common design to robotext consumers in order to generate business and consumer contacts.

176.    Defendants had a tacit understanding that the robocallers would engage in telemarketing activity that violated the TCPA.

177.    Defendants knew that the robocallers' conduct was a breach of duty to Plaintiffs.

178.    Defendants gave the robocallers substantial assistance in accomplishing the tortious result, including compensating the robocallers for generating respondents pursuant to robotexts and giving instructions on the content, timing, direction, volume, and manner of the text messaging activities.

179.    Defendants furthered the tortious conduct by their cooperation, and lending aid to the robocallers, and adopting the robocallers' actions for their own benefit.

180.    Defendants' own conduct constitutes a breach of duty to Plaintiffs.

181.    Each Plaintiff's injury is indivisible.

182.    Defendants acted tortiously, and the harm resulted from the robotexting by Defendants and the robocallers.

183.    Defendants are all jointly and severally liable for the resulting damage caused by the robocallers.

## **"ON BEHALF OF" LIABILITY**

184.    Section 227(c)(5) of the TCPA specifies that a person who has received more than one telephone call within any 12-month period "by or on behalf of the same entity" in violation of the regulations promulgated by the Federal Communications Commission may bring an action based on such violation to enjoin further calls or recover damages.

185.    The robocallers sent robotexts in violation of the FCC's regulations under 47 C.F.R. § 64.1200 to each Plaintiff on behalf of Defendants.

## CLASS ALLEGATIONS

186.    **The 47 U.S.C. § 227(b) Class ("227(b) Class")**: All Plaintiffs bring this action pursuant to Fed. R. Civ. P. 23, on behalf of a nationwide class of similarly situated individuals defined as follows:

> All persons in the United States to whose telephone number Defendants or a third party acting on Defendants' behalf placed one or more unsolicited text messages which was not made with the person's prior express written consent.

187.    **The 47 U.S.C. § 227(c) Class ("227(c) Class")**: Plaintiffs Cody Pepper, Bryant, Hudson, and Johnson bring this action pursuant to Fed. R. Civ. P. 23 on behalf of a nationwide class of similarly situated individuals defined as follows:

> All persons in the United States to whose telephone number Defendants or a third party acting on Defendants' behalf placed more than one text message within a 12-month period in which the text message was sent to a telephone number registered with the National Do Not Call Registry, which was not made with the person's prior express written consent.

188.    **The North Carolina DNC Class**: Plaintiff Powers brings this action pursuant to Fed. R. Civ. P. 23 on behalf of the following North Carolina class of similarly situated individuals:

> All persons in North Carolina to whose telephone number Defendants or a third party acting on Defendants' behalf placed one or more text messages in which the text message was sent to a telephone number registered with the National Do Not Call Registry, which was not made with the person's prior express written consent.

189.    **The North Carolina Telemarketing Class:** Plaintiff Powers brings this action pursuant to Fed. R. Civ. P. 23 on behalf of the following North Carolina class of similarly situated individuals:

> All persons in North Carolina to whose telephone number Defendants or a third party acting on Defendants' behalf placed one or more text messages in which the text message did not clearly state the identity of the telephone solicitor and/or identify the individual making the telephone solicitation.

190.     **The North Carolina ATDS Class**: Plaintiff Powers brings this action pursuant to Fed. R. Civ. P. 23 on behalf of the following North Carolina class of similarly situated individuals:

> All persons in North Carolina to whose telephone number Defendants or a third party acting on Defendants' behalf placed one or more unsolicited text messages.

191.     **The Texas Telemarketing Class**: Plaintiffs Terri Pepper, Bryant, and Hudson bring this action pursuant to Fed. R. Civ. P. 23 on behalf of the following Texas class of similarly situated individuals:

> All persons in Texas to whose telephone number Defendants or a third party acting on Defendants' behalf placed one or more text messages in which the text message did not clearly state the identity of the telephone solicitor and/or identify the individual making the telephone solicitation and/or state the purpose of the call.

192.     **The Washington Commercial Text Class**: Plaintiff Cody Pepper brings this action pursuant to Fed. R. Civ. P. 23 on behalf of the following Washington class of similarly situated individuals:

> All persons in Washington to whose cellular telephone number Defendants or a third party acting on Defendants' behalf placed one or more commercial text messages without the person's clear and affirmative consent in advance.

193.     **The Washington Telemarketing Class**: Plaintiff Cody Pepper brings this action pursuant to Fed. R. Civ. P. 23 on behalf of the following Washington class of similarly situated individuals:

> All persons in Washington to whose telephone number Defendants or a third party acting on Defendants' behalf placed one or more text messages in which the text message did not clearly state the identity of the telephone solicitor and/or identify the individual making the telephone solicitation and/or state the purpose of the call.

194.     Excluded from the Classes are: (1) Defendants, Defendants' agents, subsidiaries, parents, successors, predecessors, and any entity in which Defendants or their parents have a

controlling interest, and those entities' current and former employees, officers, and directors; (2) the Judge to whom this case is assigned and the Judge's immediate family; (3) any person who executes and files a timely request for exclusion from the particular Class; (4) any persons who have had their claims in this matter finally adjudicated and/or otherwise released; and (5) the legal representatives, successors and assigns of any such excluded person.

195. **Numerosity**: Upon information and belief, the Classes are comprised of tens of thousands of Class members.

196. Thus, the Classes are so numerous that joinder of all members is impracticable.

197. While only Defendants know the precise number and identity of Class members, according to Fluent's Annual Report for 2020, it employs text messaging campaigns to attract consumers to its digital properties "at scale" and 90% of consumers engaged with Fluent's "media on their mobile device or tablet." Annual Report, at 1, 18.

198. Fluent is also currently in the middle of expanding its usage of text messaging. *Id.* at 18. Class members can easily be identified through Defendants' records, or by other means.

199. **Commonality and Predominance**: There are several questions of law and fact common to the claims of Plaintiffs and Class members, which predominate over any individual issues, including:

> a. Whether, within the four years prior to the filing of this Complaint, Defendants or their agents sent any text messages to the Class members (other than a message made for emergency purposes or made with the prior express consent of the called party) to a Class member using any automatic telephone dialing system and prerecorded or artificial voice to any telephone number assigned to a cellular phone service;

30

b.     Whether, within the four years prior to the filing of this Complaint, Defendants or their agents sent text messages to the Nationwide DNC Class members without obtaining the requisite prior express consent;

c.     Whether Defendants negligently, knowingly, or willfully engaged in conduct that violated the TCPA;

d.     Whether Plaintiffs and the Class members were damaged by Defendants' violations of the TCPA, and the extent of damages for each instance in which the TCPA was violated.

200.    **Typicality**: Plaintiffs' claims are typical of the claims of members of the Classes.

201.    All claims are based on the same legal and factual issues.

202.    Each Plaintiff in the 227(b) Class received a text message from the Defendants to their cellular phone number.

203.    Each Plaintiff in the 227(c) Class received at least two text messages from the Defendants to their residential cellular phone numbers within a 12-month period.

204.    **Adequacy of Representation**: Plaintiffs will fairly and adequately represent and protect the interests of the members of the Classes and have retained counsel competent and experienced in complex class actions.

205.    Plaintiffs have no interest antagonistic to those of members of the Classes and Defendants have no defenses unique to Plaintiffs.

206.    The questions of law and fact common to the proposed Classes predominate over any questions affecting only individual members of the Classes.

207.    **Superiority**: A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

208.    The expense and burden of individual litigation would make it impracticable or impossible for proposed members of the Classes to prosecute their claims individually.

209.    The trial and the litigation of Plaintiffs' claims are manageable.

## COUNT I
### Violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227(b)
### (On Behalf of all Plaintiffs and the 227(b)Class)

210.    Plaintiffs incorporate by reference paragraphs 1–209 as though fully stated herein.

211.    Based on the allegations above herein, Defendants violated the TCPA, 47 U.S.C. § 227(b)(1), by placing non-emergency calls (including text messages) to the cellular telephone numbers of Plaintiffs and members of the 227(b) Class using an ATDS and/or artificial or prerecorded voice without obtaining prior express written consent.

212.    The foregoing acts and omissions of Defendants constitute numerous and multiple violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. § 227, *et seq.*

213.    As a result of Defendants' violations of 47 U.S.C. § 227, *et seq.*, Plaintiffs and the 227(b) Class are entitled to an award of $500.00 in statutory damages for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

214.    The foregoing acts and omissions of Defendants constitute numerous and multiple knowing and/or willful violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. § 227, *et seq.*

215.    As a result of Defendants' knowing and/or willful violations of 47 U.S.C. § 227, *et seq.*, Plaintiffs and the 227(b) Class are entitled to an award of $1,500.00 in statutory damages for each violation of the TCPA pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

216.     Plaintiffs and the 227(b) Class are also entitled to and do seek injunctive relief prohibiting such conduct in the future.

### COUNT II
**Violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227(c), *et seq.***
**(On Behalf of Plaintiffs Cody Pepper, Bryant, Hudson, and Johnson and the 227(c) Class)**

217.     Plaintiffs incorporate by reference paragraphs 1–209 as though fully stated herein.

218.     Based on the allegations herein, Defendants violated the TCPA, 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c)(2), by placing unsolicited telemarketing calls (including text messages) to the telephone numbers of Plaintiffs and members of the 227(c) Class even though those numbers were at all relevant times listed on the National Do Not Call Registry.

219.     Plaintiffs Cody Pepper, Bryant, Hudson, and Johnson and 227(c) Class members received two or more text messages from or on behalf of Defendants in a 12-month period.

220.     Plaintiffs Cody Pepper, Bryant, Hudson, and Johnson received two or more text messages from or on behalf of Defendants outside the hours of 8 a.m. to 9 p.m. local time at the called party's location.

221.     Plaintiffs Cody Pepper, Bryant, Hudson and Johnson and 227(c) Class members did not give prior express invitation, permission, or consent of any kind for Defendants to call them. Defendants had no established business relationship with Plaintiffs Cody Pepper, Bryant, Hudson, and Johnson or the other 227(c) Class members.

222.     As a result of Defendants' violations of 47 U.S.C. § 227, *et seq.*, Plaintiffs Cody Pepper, Bryant, Hudson, and Johnson and the 227(c) Class are entitled to an award of $500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(c)(3)(B).

223.    The foregoing acts and omissions of Defendants constitute numerous and multiple knowing and/or willful violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. § 227, *et seq*.

224.    As a result of Defendants' knowing and/or willful violations of 47 U.S.C. § 227, *et seq*., Plaintiffs Cody Pepper, Bryant, Hudson, and Johnson and the 227(c) Class members are entitled to an award of $1,500.00 in statutory damages for each violation of the TCPA pursuant to 47 U.S.C. § 227(c)(5)(B) and 47 U.S.C. § 227(c)(5)(C).

225.    Plaintiffs Cody Pepper, Bryant, Hudson, and Johnson and members of the 227(c) Class are also entitled to and do seek an injunction prohibiting Defendants and Defendants' agents from violating the TCPA, 47 U.S.C. § 227(c)(5)(A); 47 C.F.R. § 64.1200(c)(2), by placing unsolicited telemarketing calls (including text messages) to any telephone numbers on the National Do Not Call Registry.

### COUNT III
**Violations of N.C. Gen. Stat. § 75-102(a)**
**(On Behalf of Plaintiff Powers and the North Carolina DNC Class)**

226.    Plaintiff Powers incorporates the foregoing paragraphs 1–209 as if fully set forth herein.

227.    Defendants sent, or third parties on Defendants' behalf sent, text messages constituting telephone solicitations to Plaintiff Powers' and North Carolina DNC Class members' telephone numbers.

228.    Plaintiff Powers' and North Carolina DNC Class members' telephone numbers were all on the National Do Not Call Registry at the time of the text messages.

229.    Plaintiff Powers and North Carolina DNC Class members are entitled to an award of $500 in statutory damages for the first violation pursuant to N.C. Gen. Stat. § 75-105(b)(2).

230.    Plaintiff Powers and North Carolina DNC Class members are entitled to an award of $1,000 in statutory damages for the second violation pursuant to N.C. Gen. Stat. § 75-105(b)(2).

231.    Plaintiff Powers and North Carolina DNC Class members are entitled to an award of $5,000 in statutory damages for the third violation and any other violations that occur within two years of the first violation.

**COUNT IV**
**Violations of N.C. Gen. Stat. § 75-102(c)(1)**
**(On Behalf of Plaintiff Powers and the North Carolina Telemarketing Class)**

232.    Plaintiff Powers incorporates the foregoing paragraphs 1–209 as if fully set forth herein.

233.    Defendants sent, or third parties on Defendant's behalf sent, text messages constituting telephone solicitations to Plaintiff Powers' and North Carolina Telemarketing Class members' telephone numbers.

234.    The text messages did not clearly state the identity of the telephone solicitor and identify the individual making the telephone solicitation at the beginning of the telephone solicitation in violation of N.C. Gen. Stat. § 75-102(c)(1). In many cases, the text message was written under false pretenses and falsely purported to be from an unrelated third party.

235.    Plaintiff Powers and North Carolina Telemarketing Class members are entitled to an award of $500 in statutory damages for the first violation pursuant to N.C. Gen. Stat. § 75-105(b)(2).

236.    Plaintiff Powers and North Carolina Telemarketing Class members are entitled to an award of $1,000 in statutory damages for the second violation pursuant to N.C. Gen. Stat. § 75-105(b)(2).

237.    Plaintiff Powers and North Carolina Telemarketing Class members are entitled to an award of $5,000 in statutory damages for the third violation and any other violations that occur within two years of the first violation.

## COUNT V
### Violations of N.C. Gen. Stat. § 75-104(a)
### (On Behalf of Plaintiff Powers and the North Carolina ATDS Class)

238.    Plaintiff Powers incorporates the foregoing paragraphs 1–209 as if fully set forth herein.

239.    Defendants sent, or third parties on Defendants' behalf sent, unsolicited telemarketing text messages to Plaintiff Powers' and North Carolina ATDS Class members' telephone numbers.

240.    These text messages all used an "automatic dialing and recorded message player."

241.    Plaintiff Powers and North Carolina ATDS Class members are entitled to an award of $500 in statutory damages for the first violation pursuant to N.C. Gen. Stat. § 75-105(b)(2).

242.    Plaintiff Powers and North Carolina ATDS Class members are entitled to an award of $1,000 in statutory damages for the second violation pursuant to N.C. Gen. Stat. § 75-105(b)(2).

243.    Plaintiff Powers and North Carolina ATDS Class members are entitled to an award of $5,000 in statutory damages for the third violation and any other violations that occur within two years of the first violation.

## COUNT VI
### Violations of the Tex. Bus. and Comm. Code § 301.051, *et seq*.
### (On Behalf of Plaintiffs Terri Pepper, Bryant, and Hudson and the
### Texas Telemarketing Class)

244.    Plaintiffs Terri Pepper, Bryant, and Hudson incorporate the foregoing paragraphs 1–209 as if fully set forth herein.

245.    Defendants or third parties on Defendants' behalf made consumer telephone calls to consumers without immediately identifying themselves by name, the business on whose behalf they are calling, or the purpose of the call, in violation of Tex. Bus. & Comm. Code § 301.051(b).

246.    The consumer telephone calls were not in response to the express request of Plaintiffs Terri Pepper, Bryant, and Hudson and Texas Telemarketing Class members, nor primarily in connection with an existing debt or contract for which payment or performance has not been completed at the time of the call, nor to a consumer with whom the telephone solicitor has a prior or existing business relationship.

247.    The text messages alleged herein constitute consumer telephone calls from a telephone solicitor under Tex. Bus. and Comm. Code §§ 301.001(4)–(5).

248.    Plaintiffs Terri Pepper, Bryant, and Hudson and Texas Telemarketing Class members were injured as a result of Defendants' violations of Texas law alleged herein and are therefore entitled to an award of damages, plus reasonable attorney's fees and court costs. Tex. Bus. and Comm. Code § 301.104.

## COUNT VII
### Violations of Wash. Stat. § 19.160.010, *et seq*.
### (On Behalf of Plaintiff Cody Pepper and the Washington Commercial Text Class)

249.    Plaintiff Cody Pepper incorporates the foregoing paragraphs 1–209 as if fully set forth herein.

250.    Defendants' practice of transmitting and/or assisting in the transmission of electronic commercial text messages to Plaintiff Cody Pepper's and Washington Commercial Text Class members' cellular telephones violates Wash. Stat. § 19.190.060. Violations of Section 19.190.060 constitute *per se* violations of Washington's Consumer Protection Act, Wash. Stat. § 19.86.010, *et seq*.

251.    Defendants conducted these practices in the scope of their trade and in furtherance of the development and preservation of business services.

252.    Defendants' violations of the Washington Consumer Protection Act are intentional, willful, and subject to treble damages under Wash. Stat. § 19.86.010, *et seq*.

253.    Plaintiff Cody Pepper and Washington Commercial Text Class members have suffered injuries to their persons and property as a direct result of Defendants' numerous violations of Wash. Stat. § 19.86.010, *et seq*.

254.    Defendants' practices are emblematic of organizational policies and agreements among Defendants and others which have caused, and if unchecked, will continue to cause incidents, occurrences, and conduct which are in violation of Wash. Stat. § 19.86.010, *et seq*. and Wash. Stat. § 19.190.010, *et seq*.

255.    Plaintiff Cody Pepper and the Washington Commercial Text Class members are entitled to recover damages for each of Defendants' violations under Wash. Stat. § 19.190.010, *et seq.*, including liquidated damages of $500 per violation under Wash. Stat. § 19.160.040(1), and other remedies available under the Washington Consumer Protection Act, Wash. Stat. § 19.86.010, *et seq*.

256.    Plaintiff Cody Pepper and the Washington Commercial Text Class members will continue to be damaged if Defendants are not compelled to abate their unlawful conduct, as alleged herein.

257.    Plaintiff Cody Pepper and the Washington Commercial Text Class members are entitled to all attorneys' fees, costs, and treble damages as allowed by Wash. Stat. § 19.86.010, *et seq*., and as otherwise allowed by law.

**COUNT VIII**
**Violations of Wash. Stat. § 80.36.005, *et seq*.**
**(On Behalf of Plaintiff Cody Pepper and the Washington Telemarketing Class)**

258.    Plaintiff Cody Pepper incorporates the foregoing paragraphs 1–209 as if fully set forth herein.

259.    Defendants' practice of failing to identify themselves, masquerading as other entities or businesses, and failing to identify the purpose of the call violates Wash. Stat. § 80.36.390(2).

260.    Defendants' practice of using automatic dialing and announcing devices, as defined by Wash. Stat. § 80.36.400(a), for the purposes of commercial solicitation violates Wash. Stat. § 80.36.400.

261.    Defendants' foregoing violations are intentional and willful.

262.    Plaintiff Cody Pepper and Washington Telemarketing Class members have suffered injuries to their persons and property and were aggrieved by repeated violations as a direct result of Defendants' numerous violations of Wash. Stat. § 80.36.390 and Wash. Stat. § 80.36.400.

263.    Plaintiff Cody Pepper and the Washington Telemarketing Class members are entitled to recover damages for each of Defendants' violations, including liquidated damages of $100 per violation under Wash. Stat. § 80.36.390(6) and $500 per violation under Wash. Stat. § 80.36.400(3).

264.    Plaintiff Cody Pepper and the Washington Telemarketing Class members will continue to be damaged if Defendants are not compelled to abate their unlawful conduct, as alleged herein.

265.    Plaintiff Cody Pepper and the Washington Telemarketing Class members are entitled to all attorneys' fees and costs, as allowed by Wash. Stat. § 80.36.390(6), *et seq*., and as otherwise allowed by law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually, and on behalf of all others similarly situated, pray

for an Order as follows:

      A.      Finding that this action satisfies the prerequisites for maintenance as a class action and certifying the Classes defined herein;

      B.      Designating each Plaintiff as representative of the respective Classes, and the undersigned counsel as Class Counsel;

      C.      Entering judgment in favor of Plaintiffs and the Classes and against Defendants;

      D.      Awarding Plaintiffs and the Classes actual damages, statutory damages, treble damages, and punitive damages, and all other forms of available relief;

      E.      Entering an injunction enjoining Defendants from sending further unsolicited text messages and from engaging in the other unlawful conduct alleged herein;

      F.      Awarding attorney's fees and costs, including interest thereon, as allowed by law; and

      G.      Granting other relief as the Court deems just and appropriate.

## JURY DEMAND

Plaintiffs demand a trial by jury on all counts so triable.

DATED: August 4, 2021            Respectfully submitted,

                        */s/ Javier L. Merino*
                        DANNLAW
                        Javier L. Merino, Esq. (5294699)
                        372 Kinderkamack Road, Suite 5
                        Westwood, NJ 07675
                        (201) 355-3440- Direct
                        (216) 373-0539- Main
                        (216) 373-0536- Fax

                        Marc E. Dann
                        (*pro hac vice* anticipated)
                        Brian D. Flick

(*pro hac vice* anticipated)
DANNLAW
P.O. Box. 6031040
Cleveland, Ohio 44103
Office: (216) 373-0539
Facsimile: (216) 373-0536
notices@dannlaw.com

Thomas A. Zimmerman, Jr.
(*pro hac vice* anticipated)
*tom@attorneyzim.com*
Jeffrey Blake
(*pro hac vice* anticipated)
*jeff@attorneyzim.com*
ZIMMERMAN LAW OFFICES, P.C.
77 W. Washington Street, Suite 1220
Chicago, Illinois 60602
(312) 440-0020 telephone
(312) 440-4180 facsimile
*www.attorneyzim.com*

Max Morgan
*(pro hac vice* anticipated)
*Max.morgan@theweitzfirm.com*
Eric Weitz
(*pro hac vice* anticipated)
Eric.weitz@theweitzfirm.com
THE WEITZ FIRM, LLC
1528 Walnut Street, 4th Floor
Philadelphia, PA 19102
(267) 587-6240 telephone
(215) 689-0875 facsimile

*Counsel for Plaintiffs and the Putative Classes*