**United States District Court**
**Southern District of New York**
-----------------------------------------------------x
Cody Pepper, Terri Pepper, Julius
Bryant, Kimberly Hudson, Demya Johnson,
and Allison Powers,
individually, and on behalf of all
others similarly situated,
         Plaintiffs,

      -against-

Fluent, Inc. and Reward Zone
USA, LLC,
         Defendants.
-----------------------------------------------------x

Case No. 1:21-cv-06581-JGK


## <u>MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT</u>


**Klein Moynihan Turco LLP**

Jacob A. Brainard
Neil E. Asnen
450 Seventh Avenue, 40th Floor
New York, New York 10123
Email: jbrainard@kleinmoynihan.com
Email: nasnen@kleinmoynihan.com
Phone: 212.246.0900
*Attorneys for the Defendants*

# TABLE OF CONTENTS

Table of Authorities ................................................................................................ iv

Preliminary Statement ............................................................................................ 1

Summary of Facts .................................................................................................. 4

Applicable Law ...................................................................................................... 5

Argument ................................................................................................................ 6

  I.   The Unaffiliated Messages are not fairly traceable to either Defendant.................. 7

    *The Plaintiffs admit that only after they independently interacted with the landing page did they eventually arrive at a Reward Zone website* ........................................ 8

    *The Plaintiffs' allegations detail a flimsy connection between the Defendants and the text messages.* ...................................................................................................... 8

    *The Plaintiffs' allegations do not establish direct liability* ....................................... 10

    *Plaintiffs' allegations show that they have no basis for vicarious liability* ............... 11

    Actual Authority ....................................................................................................... 12

    Apparent Authority ................................................................................................... 13

    Ratification. ............................................................................................................... 14

    Other theories of agency ......................................................................................... 15

    *The Plaintiffs own allegations provide detailed confirmation that neither Defendant sent the disputed text messages.* ................................................................................ 16

  II.   All of the Fluent-Site Messages were transmitted in the permissible time window of 8am to 9pm. ........................................................................................................ 16

III.   Plaintiffs Cody Pepper, Kimberly Hudson, and Allison Powers lack standing; the Court, thus, lacks subject matter or supplemental jurisdiction over their state law claims. ........................................................................................................... 17

Conclusion ........................................................................................................... 18

# Table of Authorities

**Cases**

*An Phan v. Agoda Company Pte., Inc.,*
 351 F. Supp. 3d 1257 (N.D. Cal. 2018)...................................................................9

*Arar v. Ashcroft,*
 55 F.3d 559 (2d Cir. 2009)...................................................................................5

*Ashcroft v. Iqbal,*
 556 U.S. 662 (2009).........................................................................................14

*Bais Yaakov of Spring Valley v. Educational Testing Serv.,*
 367 F. Supp. 3d 93 (S.D.N.Y. 2019)....................................................................16

*Bank v. GoHealth, LLC,*
 No. 19-cv-5459, 2021 WL 2323282 (S.D.N.Y. Mar. 8, 2021)...............................13

*Becker v. Club Las Vegas,*
 No. 94-cv-2412, 1994 WL 376016 (S.D.N.Y. July 18, 1994)................................15

*Bell Atlantic Corp. v. Twombley,*
 555 U.S. 544 (2007).....................................................................................1, 5, 14

*Breen Air Freight, Ltd. v. Air Cargo, Inc.,*
 470 F.2d 767 (2d Cir. 1972)..............................................................................14

*Cabrera v. Gov't Employees Ins. Co.,*
 452 F. Supp. 3d 1305 (S.D. Fla. 2014)................................................................13

*Carnegie-Mellon Univ. v. Cahill,*
 484 U.S. 350 (1988)........................................................................................18

*Hale v. Teledoc Health, Inc.,*
 No. 20-cv-5245, 2021 WL 1163925 (S.D.N.Y. Mar. 25, 2021)............................14

*Heldman v. Sobol,*
 962 F.2d 148 (2d Cir. 1992)................................................................................7

*Highland Cap. Mgmt. LP v. Schneider,*
 607 F.2d 322 (2d Cir. 2010)..............................................................................13

*In re DishNetwork, LLC*,
    28 F.C.C. Rcd. 6574 (2013)..............................................................................6, 10

*Jovanovic v. SRP Investments, LLC*,
    No. 21-cv-00393, 2021 WL 4198163 (D. Ariz. Sept. 15, 2021)...........................8

*Kolari v. New York-Presbyterian Hosp.*,
    455 F.3d 118 (2d Cir. 2006)...................................................................................18

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992)...............................................................................................16

*Makarova v. United States*,
    201 F.3d 110 (2d Cir. 2000)...................................................................................18

*Monarch Ins. Co. of Ohio v. Ins. Corp. of Ireland Ltd.*,
    835 F.2d 32 (2d Cir. 1987).....................................................................................14

*Pittman by Pittman v. Grayson*,
    149 F.3d 111 (2d Cir. 1998)...................................................................................15

*Quintanilla v. WW Int'l, Inc.*,
    No. 20-cv-6261, 2021 WL 2077935 (S.D.N.Y. May 24, 2021).........................5, 6

*Skanga Energy & Marine Ltd. v. Arevenca S.A.*,
    875 F. Supp. 2d 264 (S.D.N.Y. 2012)...................................................................12

*Spokeo, Inc. v. Robbins*,
    578 U.S. 330 (2016).............................................................................................1, 6

*Tasini v. New York Times Co., Inc.*,
    184 F. Supp. 2d 350 (S.D.N.Y. 2002).....................................................................5

*Wilson v. Rater8, LLC*,
    No. 20-cv-1515, 2021 WL 4865930 (S.D. Cal. Oct. 18, 2021)..............................8

*Zanotti v. Invention Submission Corp.*,
    No. 19-cv-5893, 2020 WL 2857304 (S.D.N.Y. June 2, 2020)................................7

**Statutes**

28 U.S.C. § 1331..........................................................................................................17

28 U.S.C. § 1367(a)................................................................................................17

47 U.S.C. §227...............................................................................................2, 6

**Regulations**

47 C.F.R. §64.1200(c)(1).......................................................................................3, 16

**Other Sources**

Restatement (Third) of Agency §1.01 (2006)....................................................11

Restatement (Third) of Agency §2.01 (2006).............................................12, 15

Restatement (Fourth) of Agency §4.06 (2006)..................................................14

The Defendants, Fluent, Inc. and Reward Zone USA, LLC, file this Memorandum of Law in support of their Motion to Dismiss the First Amended Complaint ("1AC").

## **Preliminary Statement**

The six Plaintiffs assert individual and putative class claims against Reward Zone and Fluent primarily for alleged violations of the Telephone Consumer Protection Act ("TCPA") stemming from certain text messages that the Plaintiffs alleged they received. Each of the 30 text messages at issue must support its own causes of action.[1] The Plaintiffs' claims fail for the following reasons: (1) 27 of the 30 text messages at issue are not fairly traceable to either Defendant; (2) neither Defendant violated the TCPA's time-window regulations; and (3) with no viable federal claims against the Defendants, the Court lacks subject matter and supplemental jurisdiction over the state law claims.

***No Traceability, No Standing.*** A plaintiff must plead and prove that her injuries are fairly traceable to the defendant's conduct. *See, e.g.*, *Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016). At the pleading stage, courts view the allegations in the plaintiff's favor and then determine whether she states a plausible claim, not merely a possible claim. *Bell Atlantic Corp. v. Twombley*, 555 U.S. 544, 570 (2007). The Plaintiffs allege that Reward Zone or Fluent sent them 30 text messages that violate the TCPA. For 27 of those text messages

---

[1] Exhibit A to this Motion contains a detailed chart of each of the 30 text messages identified in the 1AC. This chart itemizes the following information as the Plaintiffs allege in the 1AC: (a) which plaintiff received the text message; (b) the URL of the website where a recipient landed after clicking the message's hyperlink; (c) the telephone number allegedly used to send the text messages; and (d) the date-and-time stamp allegedly indicating when the text message was received. For purposes of this Motion to Dismiss, the information in the 1AC is accepted as true.

("Unaffiliated Messages"), the Plaintiffs do not allege conduct that is fairly traceable to Reward Zone or Fluent.

To state a valid TCPA claim, a plaintiff must allege a causal connection between the text message and the defendant. *See* 47 U.S.C. §227. These Plaintiffs, however, do not. According to the 1AC, the 27 Unaffiliated Messages contained a hyperlink that, when clicked, directed the message recipient to websites that neither Defendant owns and that neither Defendant advertises on. The website where a user lands after clicking a hyperlink is called the landing page. The Plaintiffs' own allegations admit that it was only after meaningful and substantial interaction with the landing page – including completing prompts, clicking landing page hyperlinks, and clicking the browser's back button – that any of them *eventually* made their way to a Reward Zone website. Put differently, by the Plaintiffs' own admission, the Defendants did not send these text messages; the text messages had no advertisement for any of the Defendants' products or services; and the text messages had no hyperlink to Fluent or Reward Zone website.

The Plaintiffs fail to allege a plausible connection between the 27 Unaffiliated Messages and either Defendant. In fact, the Plaintiffs admit that their own subsequent internet browsing activity created the only alleged connection between the Defendants and the disputed text messages. These admissions negate any claims of direct or vicarious liability against either Defendant. The chain of causation analysis is straightforward:

- Who sent the message?

- Who authorized its transmission?

- Who is advertising products or services on the landing page?

2

But the Plaintiffs do not make these links. If the Plaintiffs have any viable TCPA claims based on the Unaffiliated Messages, those claims could only arguably be against the entity that sent the message and the entity advertising through the message. The Defendants are neither of those. The Plaintiffs themselves created the flimsy (to be generous) connection that they allege between the Defendants and the Unaffiliated Messages. They do not plausibly explain or allege how these Unaffiliated Messages link to websites that the Defendants do not own advertising products and services that the Defendants do not offer. The Plaintiffs lack standing on all claims based on the 27 Unaffiliated Messages, so this Court should dismiss.

***No Time Window Violations.*** The 1AC shows that nearly 75% of the text message at issue (22 of 30) were sent within the allowable time window that the FCC established in the TCPA implementing regulations. 47 C.F.R. §64.1200(c)(1) (not allowing telemarketing before 8am or after 9pm local time). The three text messages not included among the Unaffiliated Messages ("Fluent-Site Messages") all arrived within the proper time window. This Court should dismiss all claims based on time-window violations.

***No Subject Matter or Supplemental Jurisdiction over State Law Claims.*** Plaintiffs Cody Pepper, Kimberly Hudson, and Allison Powers raise claims based solely on Unaffiliated Messages. Thus, they lack standing to raise TCPA claims. As a result, their state law claims must fail too. Their state law claims have no common nucleus of fact with the Fluent-Site Messages, and the Court does not otherwise have either original or diversity subject matter jurisdiction over them. The Court should decline to exercise supplemental jurisdiction over Plaintiffs Cody Pepper, Hudson, and Powers' state law claims.

3

**Summary of Facts**[2]

The six individual plaintiffs allege that they collectively received 30 unsolicited text messages sent by or on behalf of Reward Zone and Fluent.[3] Doc. 34. However, only three of the 30 disputed text messages are alleged to have contained hyperlinks that, when clicked, took the recipient directly to a Reward Zone website ("Fluent-Site Messages"). Doc. 34 ¶¶ 44-45 (Terri Pepper), 63-64 (Julius Bryant), and 89-90 (DeMya Johnson). For the other 27 Unaffiliated Messages, the 1AC alleges that the text message recipient clicked on a hyperlink in the text message and then arrived at a website that was unaffiliated with either Defendant. The 1AC goes on to detail how each Plaintiff interacted with the landing page by filling out survey questions, clicking on hyperlinks contained on that website, or pressing the browser's back button and only then, after all that intervention, eventually found their way to a Reward Zone website. *See generally* Doc. 34 ¶¶46-122. Each Plaintiff has asserted claims related to differing number of text messages, listed below and in more detail in Exhibit A to this Motion.

- Terri Pepper – 1 Fluent-Site Message

- Cody Pepper – 4 Unaffiliated Messages

- Julius Bryant – 1 Fluent-Site Message, 1 Unaffiliated Message

- Kimberly Hudson – 5 Unaffiliated Messages

- DeMya Johnson – 1 Fluent-Site Messages, 16 Unaffiliated Messages

---

[2] This summary of facts is taken from the 1AC; those allegations are presumed true for purposes of this Motion.

[3] Reward Zone is a wholly owned subsidiary of Fluent, LLC. Fluent, LLC is the operating company for Fluent, Inc. Doc. 29-3, Barsky Decl. ¶4-5.

- Allison Powers – 1 Unaffiliated Message.

The Plaintiffs allege that all 30 of these text messages violate the TCPA. In Count I, they allege violations of the TCPA's autodialer restrictions. In Count II, they allege violations of the TCPA's do-not-call provision and violations of the TCPA regulations for calling outside the approved 8am to 9pm time window. The remaining claims allege violations under various state laws:

- Counts III-IV (Plaintiff Powers) – Violations of North Carolina law;

- Count V (Plaintiffs Terri Pepper, Bryant, and Hudson) – Violations of Texas law;

- Counts VI-VII (Plaintiff Cody Pepper) – Violations of Washington law.

### <u>Applicable Law</u>

***Failure to State a Claim and Lack of Subject Matter Jurisdiction.*** For the portions of the Defendants' Motion seeking dismissal under Rule 12(b)(6), the Court accepts the well-pleaded allegations as true and then evaluates whether the plaintiff has stated a plausible claim for relief. *See Twombley*, 550 U.S. at 570; *Arar v. Ashcroft*, 55 F.3d 559, 567 (2d Cir. 2009).

For the portions of this Motion seeking dismissal under Rule 12(b)(1) for lack of subject matter jurisdiction, the plaintiff must prove by a preponderance of the evidence that the court has subject matter jurisdiction. *Tasini v. New York Times Co., Inc.*, 184 F. Supp. 2d 350, 354-55 (S.D.N.Y. 2002) (cleaned up). In evaluating a Rule 12(b)(1) motion, the court may look to matters outside the pleadings such as affidavits or declarations. *Quintanilla v. WW Int'l, Inc.*, - F. Supp. 3d -, No. 20-cv-6261, 2021 WL 2077935, at *3 (S.D.N.Y. May 24, 2021) (cleaned up).

***Standing***. The plaintiff bears the burden of establishing Article III standing. To do so, a plaintiff must show that (1) she suffered an injury in fact (2) that is fairly traceable to challenged conduct of the defendant and (3) is likely to be redressed by a judgment in her favor. *Spokeo, Inc.*, 578 U.S. 330 (cleaned up). A motion to dismiss for lack of standing falls under Rule 12(b)(1). *Quintanilla*, 2021 WL 2077935, at *3.

***TCPA Claims.*** To state a claim under the TCPA's autodialer restriction, a party must plausibly allege that the recipient's phone number was created using a random or sequential number generator and that the Defendant sent or authorized the sending of the allegedly offending text message. 47 U.S.C. §227(b); *Facebook, Inc. v. Duguid*, 141 S.Ct. 1163 (2021)

The express language of the TCPA makes the person or entity that sends a text message directly liable for violating the statute. *In re DishNetwork, LLC*, 28 F.C.C. Rcd. 6574, 6583-84 (2013). The FCC has also recognized that persons or entities on whose behalf messages are sent may also be held vicariously liable for statutory violations. *Id.* at 6584. Vicarious liability is analyzed using the federal common law principles of agency. *Id.*

## **<u>Argument</u>**

The Court should dismiss the 1AC for the following reasons. *First*, the Defendants have no direct or indirect association with the 27 Unaffiliated Messages. Neither Defendant sent the messages nor hired a third party to send the Unaffiliated messages on their behalf, and the Unaffiliated Messages did not market or advertise the Defendants' websites or

services.[4] Barsky Decl. ¶¶45-55. *Second*, no message with a plausible connection to either Defendant was sent outside the permissible 8am to 9pm time window. *Third*, Plaintiffs Cody Pepper, Kimberly Hudson, and Allison Powers lack standing, and thus the Court also lacks subject matter or supplemental jurisdiction over their state law claims.

## I.     The Unaffiliated Messages are not fairly traceable to either Defendant.

The principle of traceability requires that a plaintiff must, at a minimum, establish a causal connection between the injury and the defendant's conduct. *Heldman v. Sobol*, 962 F.2d 148, 156 (2d Cir. 1992); *Zanotti v. Invention Submission Corp.*, No. 19-cv-5893, 2020 WL 2857304, at *6-8 (S.D.N.Y. June 2, 2020) (cleaned up). The standard for traceability is not low enough to include any conceivable injury no matter how indirect. *Zanotti*, 2020 WL 2857304, at *6-8 (cleaned up). Neither Defendant the proximate cause of any plaintiff's receipt of the Unaffiliated Messages. More than that, the allegations about the Unaffiliated Messages do not even point to – much less establish – a causal connection between the transmission of the text message and either Defendant's conduct. The Plaintiffs only allege that three of the 30 text messages have a direct association to either Defendant. Doc. 1 ¶¶ 44-45, 54-55, 69-70, and 77-78. For the remaining 27 text messages, the Plaintiffs openly admit the lack of connection to either Defendant. Because the 27 Unaffiliated Messages are not traceable to either Defendant, the Court should dismiss all claims arising from those messages.

---

[4] Without the complete URL for the landing pages, it is impossible to establish that the Fluent-Site Messages were from a Fluent or Reward Zone-authorized publisher. *Id.* ¶52-53.

***The Plaintiffs admit that only after they independently interacted with the landing page did they eventually arrive at a Reward Zone website.*** Each allegation about an Unaffiliated Message includes a description of just how unrelated the message and its enclosed hyperlink are to the Defendants' websites. *See, e.g.*, Doc. 34 ¶167-69. The only plausible reading of these allegations shows that the Plaintiffs are not alleging any traceable connection between either Defendant and these text messages. In fact, the allegation makes plain that it was the intentional (and often extensive) intervention of each respective Plaintiff, that created even an attenuated connection between the Defendants and the initial message.

The Plaintiffs do not allege, nor could they, that either Fluent or Reward Zone owns or operates any of the linked-to landing pages in the 27 Unaffiliated Messages. Doc. 29-3, Barsky Decl. ¶49. For each of the Unaffiliated Messages, they allege that the recipient had to navigate away from the landing page by engaging in some meaningful level of user intervention and manipulation (filling out surveys, clicking hyperlinks on the landing pages, navigating to other unrelated pages, clicking the back button, and so on) only to eventually find their way to a Reward Zone website.

***The Plaintiffs' allegations detail the flimsy connection between the Defendants and the text messages.*** While a plaintiff may rely on fair inferences to determine who sent a given text message, the permissible inferences are not without limitation. *See Jovanovic v. SRP Investments, LLC*, No. 21-cv-00393, 2021 WL 4198163, at *3 (D. Ariz. Sept. 15, 2021); *Wilson v. Rater8, LLC*, No. 20-cv-1515, 2021 WL 4865930 (S.D. Cal. Oct. 18, 2021). The Plaintiffs bear the burden of establishing a clear and unbroken chain linking

Reward Zone or Fluent to a given disputed text message. Not only do they fail to establish a causal chain, but the Plaintiffs' allegations admit that they only arrived at a Reward Zone website after their independent interactions with the landing page and other pages that have nothing to do with either Defendant.

Consider a typical example. An ordinary person receives a text message that contains a hyperlink, clicks that hyperlink, and arrives at a particular landing page. In this example, you can reasonably infer that the owner/operator is ultimately responsible for the text message (either as the sender or the party authorizing the sending). *See, e.g.*, *An Phan v. Agoda Company Pte., Inc.*, 351 F. Supp. 3d 1257 (N.D. Cal. 2018). But the allegations about the Unaffiliated Messages do not follow this example or anything close to it.

Now, take the Allison Powers text message as a corollary for all the Unaffiliated Messages. Doc. 34 ¶¶ 119-122. Powers alleges a complicated set of activity before she apparently made it to a Reward Zone website. *Id.* She clicked the text message's hyperlink and then:

- Her browser navigated to f3gvc.info, jtuzd.rdtk.io, and go.heliminage.com.

- After completing this series of three stops, she landed on angelprize.com

- She responded to survey questions and clicked a button to claim a reward

- She then landed on winprizes.today.

- For some reason, she clicked the browser's back button *several* times and landed on angelprize.com before pressing "back" *again* to land on new site dailygiftonline.com.

9

- She then interacted with dailygiftonline.com by playing a game and clicking further prompts and buttons

- She then received a pop up and clicked yet another prompt.

- She alleges that only then did her long journey end on a Reward Zone website.

*Id.* She does not allege that Fluent or Reward Zone owns angelprize.com (or any of the other at least five intervening websites), and neither does. Doc. 29-3, Barsky Decl. ¶49. Once she arrived at angelprize.com, the "chain" is complete. If she has any TCPA claim, she may have one against the message sender or the owner-operator of the advertised website – angelprize.com.

But Powers, like her fellow Plaintiffs, impermissibly tries to twist her TCPA claims beyond their constitutional limits. TCPA liability is limited to direct liability for text message senders and vicarious liability for the party that authorized the sending. *In re DishNetwork*, 28 F.C.C. Rcd. at 6583-84. That the Plaintiffs' web browsing activities eventually redirected them to a Reward Zone website does not create a basis for TCPA liability based on text messages neither Defendant sent. *See, e.g.,* Doc. 34 ¶¶119-22 The Plaintiffs' collective logic, as shown in the Powers example, stretches the chain of causation beyond the breaking point. The 1AC makes clear that the material conduct and meaningful intentional intervention of the Plaintiffs themselves broke the chain of causation.

*The Plaintiffs' allegations do not establish direct liability.* The Plaintiffs allege, on the one hand, that the Defendants sent them the disputed text messages without consent. But, on the other, they detail the multi-step process that each Plaintiff took after clicking

the text-message hyperlinks to go from non-Fluent landing pages to several intervening non-Fluent pages to eventually find a combination of actions to land on a Fluent website. *See, e.g.*, Doc. 34 ¶119-22. Consent is irrelevant when the party did not send the text message either directly or through an agent. Still, the conclusory statements about the Defendants' sending the text messages belie the specificity and detail immediately preceding them. *Compare* Doc. 34 ¶123 *with* Doc. 34 ¶¶119-22. The more detailed allegations explain *how* the Plaintiffs concluded that the Defendants sent the text messages, entirely undermining any alleged connection between the Defendants and the text messages. The Plaintiffs admit in their Unaffiliated Message allegations that their basis for a causal connection between the Defendants and the text messages is more than just attenuated. This Court should, at a minimum, dismiss any claims based on direct liability for the Unaffiliated Messages.

**Plaintiffs' allegations show that they have no basis for vicarious liability.** The FCC has recognized that an entity may be vicariously liable for TCPA violations if it has an agency relationship with the one who sent the offending text message. *Bank v. Vivint Solar, Inc.*, No. 18-cv-2555, 2019 WL 1306064, at *3-4 (E.D.N.Y. Mar. 22, 2019). Under federal common law, an agency relationship is a "fiduciary relationship" arising when the principal gives authority to an agent to "act on the principal's behalf and subject to the principal's control," and the agent agrees to act under those terms. *Id.* (ultimately quoting Restatement (Third) of Agency §1.01 (2006)). The Plaintiffs establish none of the three types of agency: (1) actual authority, (2) apparent authority, and (3) ratification.

Actual Authority. Actual authority exists only where the agent acts according to the principal's instructions. Restatement (Third) of Agency §2.01 (2006). The actual authority allegations do not provide grounds for a plausible inference that either Defendant controlled the entity that sent a particular text message. In fact, the Plaintiffs' allegations of actual agency authority are a classic case of contradiction. Doc. 34 ¶¶138-51. So this Court should dismiss the Unaffiliated Message claims based on actual authority.

The Plaintiffs admit that the Defendants lacked control over crucial aspects of the disputed text messages. *First*, the 1AC acknowledges that the Defendants did not have control over the list of individuals to whom messages might be sent. Doc. 34 ¶142.

*Second*, while the Plaintiffs allege in paragraphs 143-44 that the Defendants controlled the messages' hyperlinked websites, they also alleged that the hyperlinks lead to websites that have no affiliation with either Defendant. It was only through the Plaintiffs' engaging in a multi-step and multi-website process (just like Allison Powers did) that they eventually found a Reward Zone website. *See, e.g.*, Doc. 34 ¶120-22.

While, at this stage, the Rules permit the Plaintiffs more latitude to rely on some inferences to plead actual authority, these Plaintiffs' allegations as a whole do not allow for those favorable inferences. *See Skanga Energy & Marine Ltd. v. Arevenca S.A.*, 875 F. Supp. 2d 264, 269 (S.D.N.Y. 2012) (holding that a plaintiff must allege enough to create circumstantial evidence of actual authority). The Unaffiliated Message allegations do not provide circumstantial evidence of actual authority; in fact, they demonstrate that no such agency or connection existed or ever could have. The Plaintiffs have failed to state a

plausible claim that the nonparty sending one of the text messages acted with actual authority.

Apparent Authority. The Plaintiffs' argument for apparent authority fare no better. Doc. 34 ¶¶152-60. "Apparent authority exists when a principal, either intentionally or by lack of ordinary care, induces [a third party] to believe that an individual has been authorized to act on its behalf." *Highland Cap. Mgmt. LP v. Schneider*, 607 F.2d 322, 328 (2d Cir. 2010). Only the principal's actions can create apparent authority; an agent cannot do so on its own. *Cabrera v. Gov't Employees Ins. Co.*, 452 F. Supp. 3d 1305, 1320 (S.D. Fla. 2014) (internal citations omitted). The 1AC provides no basis to suggest that either Defendant induced anyone to believe that the message senders acted on either Defendant's behalf.

The Unaffiliated Messages contained hyperlinks that the Plaintiffs admit did not link to a Fluent or Reward Zone website. The 1AC contains no allegations that explain or illuminate what actions Fluent and Reward Zone took to create the impression of apparent authority. *Id.* Instead, the allegations about the Unaffiliated Messages detail the roundabout, indirect path that each Plaintiff had to take to get to a Reward Zone website. That path is hardly consistent with allegations that the Defendants themselves created the impression of apparent authority. *See Bank v. GoHealth, LLC*, No. 19-cv-5459, 2021 WL 2323282 (S.D.N.Y. Mar. 8, 2021) *report adopted at* 2021 WL 1884671 (S.D.N.Y. May 11, 2021). The Plaintiffs have no plausible claims based on apparent authority.

<u>Ratification.</u> The Plaintiffs also fail to establish an agency relationship based on a theory of ratification. Doc. 34 ¶¶161-69. Ratification requires that the principal, with full knowledge of the facts, accept the agent's actions "in circumstances indicating an intention to adopt the unauthorized arrangement." *Hale v. Teledoc Health, Inc.*, No. 20-cv-5245, 2021 WL 1163925, at *5 (S.D.N.Y. Mar. 25, 2021) (quoting *Monarch Ins. Co. of Ohio v. Ins. Corp. of Ireland Ltd.*, 835 F.2d 32, 36 (2d Cir. 1987)). A plaintiff must allege "objective and externally observable" conduct that the principal has chosen to consent to the agent's actions. Restatement (Fourth) of Agency §4.06.

But the 1AC does not include allegations with those details. The Plaintiffs' inadequate answer to the question should lead to dismissal. Paragraphs 161-64 provide only conclusory statements that might state a *possible* ratification claim, without providing meaningful facts about the Defendants' conduct to create a *plausible* claim based on ratification. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009) ("[Pleading standards] do not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions . . . only a complaint that states a plausible claim for relief survives a motion to dismiss.") (internal citations omitted); *Twombley*, 550 U.S. at 555 ("a formulaic recitation of the elements of a cause of action will not do.") (internal citation omitted). Instead of facts, the 1AC includes only empty conclusory statements.

In fairness, the Plaintiffs' task is here is difficult. They must plausibly allege (and eventually prove) that the Defendants approved the sending of text messages that did not market or advertise either the Defendants' websites or services that they offer. *Breen Air Freight, Ltd. v. Air Cargo, Inc.*,   470 F.2d 767, 772-73 (2d Cir. 1972) (ratification

requires some conduct by the principal to establish assent to the purported agent's actions). While the Plaintiffs may not be able to know every detail at the pleading stage, they must allege more than they do for their ratification claim to survive. All the 1AC offers is a series of intentionally inflammatory and irrelevant statements that have nothing to do with ratification of conduct that resulted in the messages that *the Plaintiffs* allegedly received. *See* Paragraphs 165-69. These allegations are merely a distraction, meant to divert the Court's attention from the lack of factual support for ratification.

Other theories of agency. The Plaintiffs plead three more theories of agency: joint enterprise, acting in concert, and "on behalf of" liability. Doc. 1 ¶¶167-85. Each fares no better than the traditional agency theories.

"On behalf of" liability requires no additional analysis since it is subsumed in the concepts of actual or apparent authority. It merely holds that the one on whose behalf text messages are sent can be liable under the TCPA.

Similarly, joint enterprise liability is a state-law based theory akin to actual authority and requiring similar elements to prove, most notably control over conduct. *Becker v. Club Las Vegas*, No. 94-cv-2412, 1994 WL 376016, at *5 (S.D.N.Y. July 18, 1994); Restatement (Third) of Agency §2.01 (2006). So joint enterprise liability fails for the same reasons as the Plaintiffs' actual authority theory.

"Acting in concert" is also a state-law tort theory of liability. It requires proof of (1) an agreement to participate in common plan to commit a tortious act; (2) tortious conduct by the defendant; (3) and commission of a tortious act in furtherance of the common plan. *Pittman by Pittman v. Grayson*, 149 F.3d 111, 122-23 (2d Cir. 1998) (internal citations

15

omitted). TCPA violations are legal (statutory) harms and not torts. The Plaintiffs do not allege any tortious conduct, merely violations of the TCPA. Acting in concert liability, like the other agency theories previously addressed, cannot support a vicarious liability claim against the Defendants.

*The Plaintiffs own allegations provide detailed confirmation that neither Defendant sent the disputed text messages.* A plaintiff must allege an injury fairly traceable to the defendant's conduct. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). This traceability requirement "ensures that there is a genuine nexus between a plaintiff's injury and a defendant's alleged conduct." *Bais Yaakov of Spring Valley v. Educational Testing Serv.*, 367 F. Supp. 3d 93, 112 (S.D.N.Y. 2019) (cleaned up). Traceability ensures that a defendant is not held liable for an alleged injury that is the work of "some third party not before the court." *Id.* (cleaned up).

For the Unaffiliated Messages, the Plaintiffs fail to plausibly establish a nexus between the text messages and either Defendant. The Plaintiffs cannot create the causal link that their own allegations show does not exist. Even if repleaded, their claims could not survive a subsequent motion to dismiss, making further amendment futile. The path from text message hyperlink to Reward Zone website will not change or become less dependent on the recipient's multi-stage interference.

## II.    All of the Fluent-Site Messages were transmitted in the permissible time window of 8am to 9pm.

The TCPA's implementing regulations prohibit telemarketers from sending telephone solicitation messages before 8am or after 9pm local time. 47 C.F.R. §

64.1200(c)(1). The 1AC's allegations show that neither Defendant violated the regulation. Almost 75% of the text messages at issue bear a timestamp within the allowable time window. Only eight of the 30 text messages were allegedly sent outside the window. All eight are Unaffiliated Messages that are not traceable to either Defendant. For the three Fluent-Site Messages identified in the 1AC, the Plaintiffs' own allegations show that neither message violated the time window restrictions. *See* Ex A. Thus, Plaintiffs have failed to state a claim for violating section 64.1200(c)(1) and based on their own allegations, never could state a claim. The Court should dismiss all time-window claims without leave to amend.

### III.   Plaintiffs Cody Pepper, Kimberly Hudson, and Allison Powers lack standing; the Court, thus, lacks subject matter or supplemental jurisdiction over their state law claims.

Plaintiffs Cody Pepper, Hudson, and Powers lack standing. They do not and cannot show that the harms they allege are fairly traceable to Fluent or Reward Zone. Their lack of standing extends to both their TCPA and their state law claims. In addition to their standing deficiencies, the Court should also dismiss their claims for lack of subject matter jurisdiction.

Federal courts do not have original jurisdiction over state law claims in the absence of diversity between the parties. *See* 28 U.S.C. § 1331-1332. Counts 3,4, 6, and 7 as well as Hudson's claims in Count 5 are, on their face, based solely on state law and not an independent federal question. When, as the Plaintiffs plead here, jurisdiction is based on a federal question, courts may exercise supplemental jurisdiction over state law claims. 28 U.S.C. § 1367(a). When the claims establishing original jurisdiction are dismissed, courts

usually decline to exercise supplemental jurisdiction over the remaining state-law claims in the interest of "judicial economy, convenience, fairness, and comity." *Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 119 (2d Cir. 2006) (citing *Carnegie-Mellon Univ. v. Cahill*, 484 U.S. 350, n. 7 (1988)).

The Court lacks original jurisdiction over Counts 3,4, 6, and 7 as well as Hudson's claims in Count 6. With no claim that triggers the Court's original jurisdiction, this Court should decline to exercise supplemental jurisdiction. These counts detail purely state law claims by the three Plaintiffs who do not have any viable federal claims. These counts also do not have a common nucleus of fact with any of the TCPA claims stemming from the three Fluent-Site messages. The 1AC does not provide any alternative basis to invoke the Court's jurisdiction over the state law claims. *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) (cleaned up) (the plaintiff must prove subject matter jurisdiction by a preponderance of the evidence). As already detailed in Part I of the Argument, these three Plaintiffs fail to state a TCPA claim against either Defendant.

## <u>Conclusion</u>

- Dismiss all claims based on the Unaffiliated Messages, which includes every claim for Plaintiffs Cody Pepper, Kimberly Hudson, and Allison Powers;

- Dismiss all claims of Plaintiffs Johnson and Bryant that stem from the Unaffiliated Messages;

- Dismiss all claims based on alleged time-window violations;

- Dismiss the accompanying state law claims for lack of jurisdiction; and

- Award any further relief that this Court deems appropriate.

## **Formatting Certification**

I certify that this brief conforms to the Court's formatting requirements and contains 4,864 words.

Dated: New York, New York
        February 25, 2022

                                  **Klein Moynihan Turco LLP**

                                  _____/s Jacob A. Brainard_____
                                  Jacob A. Brainard
                                  Neil E. Asnen
                                  450 Seventh Avenue, 40th Floor
                                  New York, New York 10123
                                  Email: jbrainard@kleinmoynihan.com
                                  Email: nasnen@kleinmoynihan.com
                                  Phone: 212.246.0900
                                  *Attorneys for the Defendants*