**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------x
Cody Pepper, Terri Pepper, Julius Bryant, Kimberly Hudson, Demya Johnson, and Allison Powers, individually, and on behalf of all others similarly situated,

        Plaintiffs,

  -against-

Fluent, Inc. and Reward Zone USA, LLC,

        Defendants.
------------------------------------------------------x

Case No. 1:21-cv-06581-JGK

# MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL ARBITRATION

**Klein Moynihan Turco LLP**

Jacob A. Brainard
Neil E. Asnen
450 Seventh Avenue, 40th Floor
New York, New York 10123
Email: jbrainard@kleinmoynihan.com
Email: nasnen@kleinmoynihan.com
Phone: 212.246.0900
*Attorneys for the Defendants*

## Table of Contents

Table of Authorities ................................................................................................................. iii

Summary of the Argument ........................................................................................................ 1

Statement of Facts ..................................................................................................................... 2

Argument ................................................................................................................................... 3

    I.    The parties have valid, enforceable agreements that include these disputes. ........... 3
        *Terri Pepper entered into a valid agreement with the Defendants* ............................. 3
        *Julius Bryant entered into a valid agreement with the Defendants* ........................... 5

    II.    The Arbitration Clauses are enforceable; these disputes fall within their scope. ... 6
        *Courts in this Circuit and across the country have enforced similar agreements* ....... 6
        *The disputes fall within the scope of the arbitration provision* ................................. 8

    III.    The Court should enforce the agreements and compel these disputes to arbitration. ....................................................................................................................... 10

Conclusion ............................................................................................................................... 10

Formatting Certification .......................................................................................................... 11

# Table of Authorities

<u>Cases</u>

*Crawford v. Beachbody, LLC*,
    No. 14-cv-1583, 2014 WL 6606563 (S.D. Cal. Nov. 14, 2014)..............................7

*Fteja v. Facebook, Inc.*,
    841 F. Supp. 2d 829 (S.D.N.Y. 2012)............................................................1, 7, 8

*Kai Peng v. Uber Technologies, Inc.*,
    237 F. Supp. 3d 36 (E.D.N.Y. 2017)....................................................................10

*Meyer v. Uber Technologies, Inc.*,
    868 F.3d 66 (2d Cir. 2017).....................................................................1, 3, 6, 7, 8

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
    460 U.S.1 (1983)................................................................................................1, 3

*Rakofsky v. AirBnB, Inc.*,
    2020 N.Y. Slip. Op. 33638(U) (Sup. Ct. NY Co. Nov. 3, 2020)..............................8

*Specht v. Netscape Comm. Corp.*,
    306 F.3d 17 (2d Cir. 2002)......................................................................................8

*Starke v. Gilt Groupe, Inc.*,
    No. 13-cv-5497, 2014 WL 1652225 (S.D.N.Y. Apr. 24, 2014)...............................7

<u>Statutes</u>

9 U.S.C. §3...................................................................................................................1, 3

The Defendants, Fluent, Inc. and Reward Zone USA, LLC, move this Court for an order compelling Terri Pepper and Julius Bryant to raise their claims against the Defendants in arbitration and dismissing their claims from this action.

## Summary of the Argument

Terri Pepper and Julius Bryant bring individual and putative class claims against the Defendants for alleged violations of the Telephone Consumer Protection Act ("TCPA") arising from certain text messages. But each of these Plaintiffs agreed to resolve disputes with the Defendants in binding arbitration. They also agreed to waive any right to participate in class action claims against the Defendants. This Court should dismiss Pepper and Bryant's claims in favor of resolution by arbitration.

Federal law favors arbitration. 9 U.S.C. §3. When evaluating an arbitration agreement, courts should construe any doubts in favor of arbitration. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S.1, 24-25 (1983). Whether a valid arbitration agreement exists is evaluated using normal principles of contract law. *Meyer v. Uber Technologies, Inc.*, 868 F.3d 66, 73-74 (2d Cir. 2017) (cleaned up). The Fluent agreement at issue selects New York law, and since the Plaintiffs sued Fluent in New York, the Court should apply New York law in interpreting the contract.

While visiting Fluent-owned websites, both Pepper and Bryant agreed to Terms and Conditions that include a mandatory arbitration clause and a class action waiver. Barsky Decl. Ex. A, C; *see Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829 (S.D.N.Y. 2012) (affirming a similar website agreement as valid and binding). The disputes over text messages fit neatly within the scope of the arbitration agreement with any challenge to

1

arbitrability decided by the arbitrator. The evidence with this motion confirms that each Plaintiff was on notice of the Terms and Conditions when each confirmed agreement. This Court should compel these Plaintiffs to bring these claims in arbitration.

### Statement of Facts

Pepper and Bryant allege that each received unsolicited text messages from the Defendants in 2020. Doc. 34 ¶¶44-46 (Pepper), ¶63-68. The Defendants did not send or authorize any agent to send the messages. Barsky Decl. ¶44-54.

***Terri Pepper.*** In October 2017, Pepper visited FindDreamJobs.com, a Fluent-owned website. Barsky Decl. ¶13. While there, she provided her first name, last name, city, state, zip code, telephone number, email address, and date of birth. *Id.* Ex. A. Above the call-to-action button on the website's registration page, Fluent had posted a conspicuous notice: "I understand and agree to the Terms, which includes mandatory arbitration and Privacy Policy, and agree to receive daily emails from FindDreamJobs." *Id.* Pepper registered for the website and, thus, provided her consent to be bound by the hyperlinked Terms and Conditions.

***Julius Bryant.*** In August 2016, Bryant visited OnlinePromotionsUSA.com, a Fluent-owned website. Barsky Decl. Ex. D. While there, Bryant provided his first name, last name, zip code, street address, city, state, phone number, date of birth, and gender. *Id.* Ex. C. Above the call-to-action button on the website's registration page, Fluent has posted a conspicuous message: "I understand and agree to the Terms and Conditions which include mandatory arbitration and Privacy Policy." *Id.* Bryant checked a box and

2

registered for the website and, thus, agreed to be bound by the hyperlinked Terms and Conditions.

## Argument

Federal law includes a strong preference in favor of arbitration. 9 U.S.C. §3. Courts resolve any doubts or ambiguities about arbitration in favor of it. *Moses H. Cone*, 460 U.S. at 24-25. The question for courts is whether a valid arbitration agreement exists and then whether the dispute falls within the scope of the arbitration agreement. *Meyer*, 868 F.3d at 73-74. Terri Pepper and Julius Bryant each visited a Fluent-owned website and, while there, agreed to certain Terms and Conditions, including both a mandatory arbitration clause and a waiver of the right to bring or participate in a class action lawsuit against the Defendants. Barsky Decl. Ex. B, D. With a valid arbitration provision and a dispute that falls within its scope, the Court should dismiss Terri Pepper and Julius Bryant's claims and compel arbitration.

### I. The parties have valid, enforceable agreements that include these disputes.

***Terri Pepper entered into a valid agreement with the Defendants.*** On October 30, 2017, Terri Pepper visited FindDreamJobs.com, a Fluent-owned website. Barsky Decl. ¶13. While on the website, Pepper provided personal information including her first name, last name, city, state, zip code, telephone number, email address, and date of birth. *Id*. Ex. A. At the registration page, she requested daily email alerts about jobs in her area along with providing some of that personal information. *Id.* Below the "receive daily job alert emails" checkbox (and above the call-to-action button) was the following conspicuous

3

notice: "I understand and agree to the Terms, which includes mandatory arbitration and Privacy Policy, and agree to receive daily emails from FindDreamJobs." *Id.* When she clicked the call-to-action button, Pepper was on, at least, inquiry notice of the Terms and Conditions. The pertinent part of the sign up and agreement page is reproduced below.[1]



The agreement would be enforceable if the user had to click on the hyperlinked "Terms" to read all the agreement's specific provisions. Even so, Fluent also included the

---

[1] A picture of the full signup page is in the Barsky Declaration at Ex. A (Terri Pepper) and C (Julius Bryant). These two in-text images of the signup box are cropped from the fuller pictures simply for ease of reference.

4

mandatory arbitration term in the assent statement itself. When completing registration, Pepper would have been alerted to the mandatory arbitration provision by its inclusion in the assent statement.

***Julius Bryant entered into a valid agreement with the Defendants.*** On August 1, 2016, Julius Bryant visited OnlinePromotionsUSA.com, a Fluent-owned website. Barsky Decl. Ex. D at 1. During that visit, Bryant provided his first name, last name, zip code, street address, city, state, phone number, date of birth, and gender. *Id.* Ex. C. Above the call-to-action button, Bryant was presented with a similar disclosure that read: "I understand and agree to the Terms and Conditions which include mandatory arbitration and Privacy Policy." *Id.* Bryant then checked a box that read "Please add me to receive relevant daily emails from couponistarewards.com and I agree to the National Consumer Center Privacy Policy." *Id.* Bryant then clicked "Submit." *Id.* National Consumer Center is a Fluent-owned enterprise. *Id.* Ex. D at 1. The pertinent part of the final sign up and agreement page is reproduced below.



The agreement would be enforceable if the user had to click on the hyperlinked "Terms & Conditions" to read all the agreement's specific provisions. Even so, Fluent also included the mandatory arbitration term in the assent statement itself. When completing registration, Bryant would have been alerted to the mandatory arbitration provision by its inclusion in the assent statement.

    II.    **The Arbitration Clauses are enforceable; these disputes fall within their scope.**

***Courts in this Circuit and across the country have enforced similar agreements.*** Agreements like these are ubiquitous across the internet. Internet agreements fall into two broad categories: clickwrap (where a user must affirmatively click a button to provide assent) and browsewrap (where a user agrees merely by using the website). *Meyer*, 868 F.3d at 75 (internal citations omitted). Using the examples in *Meyer v. Uber Technologies*,

the Fluent agreement is a hybrid of browsewrap and clickwrap – requiring the user to press a call-to-action button to agree but not requiring the user to click a standalone checkbox signifying that agreement. *See id.* at 76 (enforcing the Uber agreement where the assent statement was displayed directly **below** the action button); *Fteja*, 841 F. Supp. 2d at 834-39 (approving an agreement formed at registration like the Fluent agreements); *Starke v. Gilt Groupe, Inc.*, No. 13-cv-5497, 2014 WL 1652225, at *2-3 (S.D.N.Y. Apr. 24, 2014) (upholding a similar agreement formed at checkout for an online purchase); *Crawford v. Beachbody, LLC*, No. 14-cv-1583, 2014 WL 6606563 (S.D. Cal. Nov. 14, 2014) (same). Whether an agreement is clickwrap, browsewrap, or somewhere in between, the standard for enforceability is whether a reasonable internet user would have notice of the terms and conditions. *Id.* at 76 (internal citations omitted).

The agreement that the Second Circuit addressed and enforced in *Meyer*, provides a useful parallel. The *Meyer* Court highlighted several features of the Uber agreement that showed it provided, at least, inquiry notice to a reasonable internet user. For instance, like the Uber agreement, the agreements here include hyperlinks to the Terms and Conditions as well as the Privacy Policy. *Id.* In 2016 and 2017, any reasonable internet user would know that an underlined word, like <u>Terms</u>, is a hyperlink. *See Meyer*, 868 F.3d at 77-78. As with the Uber agreement, Fluent provided notice to the two agreements here on uncluttered pages where the acknowledgment of assent and action button are both visible at once in the same line-of-sight. *Id.* at 78. Internet users have come to expect disclosures and related acknowledgments of assent like these when they register with a website. *Id.* (internal citation omitted). Finally, "as long as the hyperlinked text was itself reasonably

7

conspicuous," a reasonable internet user would have had, at least, "constructive notice of the terms." *Id.* at 79; *Fteja,* 841 F. Supp. 2d at 839 (equating a hyperlink to turning over a cruise ticket to read the terms and conditions); *Rakofsky v. AirBnB, Inc.*, No. 101570/2019, 2020 N.Y. Slip. Op. 33638(U), at **4 (Sup. Ct. NY Co. Nov. 3, 2020).

The pictures of the registration pages where the agreements were formed tell the whole story. The acknowledgment of assent and notice of the terms of condition are in a contrasting font color to the background. Each is located **above** the call-to-action buttons that users must press to navigate through the website. *See Meyer*, 868 F.3d at 76 (enforcing agreement where assent statement was **below** the call-to-action button); *Fteja*, 841 F. Supp. 2d at 835-39 (same). A statement above the call-to-action button is more conspicuous than one below the button since a user is far less likely to miss seeing it. *See cf. Specht v. Netscape Comm. Corp.*, 306 F.3d 17 (2d Cir. 2002) (declining to enforce agreement where user had to scroll down well-below the call-to-action button to see the assent statement). Neither page is flooded with extraneous hyperlinks, with each containing only hyperlinks to the website's Privacy Policy and Terms. *Id.* at 78. The disclosure even includes the extraordinarily transparent step of explicitly identifying the mandatory arbitration provision. Barsky Decl. Ex. A, C. The Plaintiffs were on inquiry notice of the mandatory arbitration provision through its clear and obvious presence in the assent statements.

***The disputes fall within the scope of the arbitration provision.*** With a valid agreement to arbitrate in place, the next question is whether this dispute falls within the scope of that agreement. The plain language of both agreements gives the arbitrator the sole authority to decide all issues between the parties, including the arbitrability of the

8

dispute. Barsky Decl. Ex. B at 5 (Terri Pepper), Ex. D at 3 (Julius Bryant). The pertinent sentences in each agreement are identical: "The arbitrator will have exclusive authority to resolve any dispute including any claim that all or any part of the Terms & Conditions, including this provision, are unenforceable." *Id.*

The agreements also include the Plaintiffs' waiver of the right to bring or participate in a class action. *Id.* Ex. B at 6 (Terri Pepper), Ex. D at 3 (Julius Bryant). The waiver provisions consist of two parts: (1) injunctive relief and (2) explicit waiver. The injunctive relief provision in each agreement permits Fluent to seek an injunction precluding the other party from participating in any class action or multi-party arbitration, alongside a provision permitting the user to opt out of the arbitration and class action waiver within 30 days. *Id.* The explicit waiver is identical in each agreement, featured in all capital letters:

> YOU ACKNOWLEDGE AND AGREE THAT, VIA YOUR ACCEPTANCE OF THESE DISPUTE RESOLUTION PROVISIONS, YOU WAIVE ANY RIGHT TO A JURY TRIAL, AS WELL AS YOUR RIGHT TO BRING, JOIN OR PARTICIPATE AS A PLAINTIFF OR A CLASS MEMBER IN A CLASS ACTION SUIT OR MULTI-PARTY ARBITRATION BROUGHT AGAINST US, ANY PERSON RELATED TO US OR A SERVICE PROVIDER USED BY US TO PROVIDE THE SERVICE.

*Id.*

At bottom, the dispute here is over whether Fluent sent Terri Pepper or Julius Bryant certain text messages. A dispute about text messages falls within the scope of the arbitration provision. Even if the Plaintiffs disagree, they must submit their challenge on the scope of the agreement to the arbitrator.

9

### III. The Court should enforce the agreements and compel these disputes to arbitration.

Both federal and New York law support enforcement of the agreement to submit disputes to mandatory arbitration. The law requires only that a reasonable internet user be on inquiry notice of the terms of an internet agreement for a court to find the agreement valid. *See Kai Peng v. Uber Technologies, Inc.*, 237 F. Supp. 3d 36, 47-48 (E.D.N.Y. 2017) (applying New York law to Uber's terms and conditions agreement with a mandatory arbitration clause). Any reasonable internet user would have known that the Terms and Conditions were available by clicking the hyperlink. As a user's vision traverses the signup pages, she could not miss the respective disclosure notices when completing registration by clicking the call-to-action button to navigate off the webpage. This is all the more apparent here because both Plaintiffs took the added step of checking the box directly above the disclosure notice. The parties entered into a valid arbitration agreement, and this Court should dismiss all Terri Pepper and Julius Bryant's claims (state and federal), compelling them to arbitrate the disputes.

### Conclusion

The parties agreed to resolve these TCPA disputes in binding arbitration. The Court should grant the Motion to Compel Arbitration, dismiss Terri Pepper and Julius Bryant's claims, order that any TCPA claims against the Defendants be brought in arbitration, and award any further relief this Court deems appropriate.

Case 1:21-cv-06581-JGK   Document 47   Filed 02/25/22   Page 14 of 14

## **Formatting Certification**

I certify that this document conforms to the Court's formatting requirements and contains 2,328 words.

Dated: New York, New York
       February 25, 2022

                                          **KLEIN MOYNIHAN TURCO LLP**

                                          ____/s Jacob A. Brainard_____
                                          Jacob A. Brainard
                                          Neil E. Asnen
                                          450 Seventh Avenue, 40th Floor
                                          New York, New York 10123
                                          Email: jbrainard@kleinmoynihan.com
                                          Email: nasnen@kleinmoynihan.com
                                          *Attorneys for the Defendants*