**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

CODY PEPPER, TERRI PEPPER, JULIUS BRYANT, KIMBERLY HUDSON, DEMYA JOHNSON, and ALLISON POWERS, individually and on behalf of all others similarly situated,

*Plaintiffs,*

v.

FLUENT, INC. and REWARD ZONE USA, LLC,

*Defendants.*

Case No.: 1:21-cv-06581-JGK

**PLAINTIFFS TERRI PEPPER AND JULIUS BRYANT'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION**

**District Judge John G. Koeltl**


Javier L. Merino, Esq. (5294699)
*jmerino@dannlaw.com*
DANNLAW
1520 U.S. Highway 130, Suite 101
North Brunswick, NJ 08902
(201) 355-3440 telephone
(216) 373-0536 facsimile

Thomas A. Zimmerman, Jr. (*pro hac vice*)
*tom@attorneyzim.com*
ZIMMERMAN LAW OFFICES, P.C.
77 W. Washington Street, Suite 1220
Chicago, Illinois 60602
(312) 440-0020 telephone
(312) 440-4180 facsimile
*www.attorneyzim.com*

Max Morgan (*pro hac vice*)
*Max.morgan@theweitzfirm.com*
Eric Weitz (*pro hac vice*)
*Eric.weitz@theweitzfirm.com*
The Weitz Firm, LLC
1528 Walnut Street, 4th Floor
Philadelphia, PA 19102
(267) 587-6240 telephone
(215) 689-0875 facsimile

*Counsel for Plaintiffs and the Putative Classes*

## TABLE OF CONTENTS

I. INTRODUCTION .......... 1

II. STATEMENT OF RELEVANT FACTS .......... 1

III. LEGAL STANDARD .......... 3

IV. ARGUMENT .......... 4

A. Plaintiffs Did Not Agree to Arbitrate, and Never Visited the Job Site or the Promotion Site Prior to Filing This Lawsuit .......... 4

B. The Design and Content of the Job Site and Promotion Site Do Not Give Reasonable Notice of the Arbitration Provision .......... 8

1. The Job Site Did Not Provide Reasonably Conspicuous Notice of the Arbitration Provision .......... 9

2. The Promotion Site Did Not Provide Reasonably Conspicuous Notice of the Arbitration Provision .......... 13

V. CONCLUSION .......... 14

# TABLE OF AUTHORITIES

**_Page_**

***Cases***

*Abram Landau Real Estate v. Bevona*,
123 F.3d 69 (2d Cir. 1997)....3

*Accardo v. Equifax, Inc.*,
No. 18-5030, 2019 WL 5695947 (E.D.N.Y. Aug. 9, 2019) ....7

*Anand v. Heath*,
No. 19-cv-00016, 2019 U.S. Dist. LEXIS 109076 (N.D. Ill. June 28, 2019)....10, 11

*Applied Energetics, Inc. v. New Oak Capital Mkts., LLC*,
645 F.3d 522 (2d Cir. 2011)....3

*Barr v. Am. Ass'n of Political Consultants, Inc.*,
140 S. Ct. 2335 (2020)....7

*Bensadoun v. Jobe-Riat*,
316 F.3d 171 (2d Cir. 2003)....3

*Berman v. Freedom Fin. Network, LLC*,
No. 20-16900, 2022 U.S. App. LEXIS 9083 (9th Cir. 2022) ....12, 13

*Cullinane v. Uber Techs, Inc.*,
893 F.3d 53 (1st Cir. 2018)....9

*Granite Rock Co. v. Int'l Bhd. of Teamsters*,
561 U.S. 287 (2010)....3

*Hellstrom v. U.S. Dep't of Veterans Affairs*,
201 F.3d 94 (2d Cir. 2000)....8

*Jillian Mech. Corp. v. United Serv. Workers Union Local 355*,
882 F. Supp. 2d 358 (E.D.N.Y. 2012) ....4

*Meyer v. Uber Techs., Inc.*,
868 F.3d 66 (2d Cir. 2017)....12

*Nguyen v. Barnes & Noble Inc.*,
763 F.3d 1171 (9th Cir. 2014) ....8, 13

*Nicosia v. Amazon, Inc.*,
384 F. Supp. 3d 254 (E.D.N.Y. 2019) ....11, 13

*Soliman v. Subway Franchisee Advert. Fund Tr., Ltd.*,
999 F.3d 828 (2d Cir. 2021)....................13

*Sgouros v. TransUnion Corp.*,
817 F.3d 1029 (7th Cir. 2016) ....................8

*Specht v. Netscape Commc'ns Corp.*,
306 F.3d 17 (2d Cir. 2002)....................8

*United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*,
363 U.S. 574 (1960)....................3

Plaintiffs Terri Pepper ("Pepper") and Julius Bryant ("Bryant") (collectively, "Plaintiffs"), submit this memorandum of law in opposition to Defendants Fluent, Inc. and Reward Zone USA, LLC's (together, "Defendants") Motion to Compel Arbitration (Dkt No. 46) (the "Motion"). For the reasons stated below, the Motion should be denied.

## I. INTRODUCTION

Plaintiffs did not agree to the alleged arbitration agreements. Plaintiffs did not even visit the websites on which the agreements were allegedly posted. Because Plaintiffs did not agree to any arbitration agreement with Defendants, or authorize anyone else to do so on their behalf, Defendants' Motion should be denied.

Assuming, *arguendo*, that Plaintiffs visited the websites as Defendants assert, the webpages included in the Declaration of Daniel J. Barsky ("Barsky Decl.") (Dkt. No. 48) failed to provide Plaintiffs with reasonable notice of the terms containing the alleged arbitration agreement, and Plaintiffs were unable to take action that unambiguously manifested their assent of those terms. Accordingly, Defendants' Motion should be denied.

## II. STATEMENT OF RELEVANT FACTS

This is a nationwide consumer class action lawsuit against Defendants for sending and causing to be sent automated and unsolicited telemarketing text messages (some through affiliate networks) to consumers' residential and cellular telephones registered on the National Do Not Call Registry in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq*. ("TCPA"), its implementing regulations, 47 C.F.R. § 64.1200 *et seq*., and related state laws. First Amended Complaint ("FAC") ¶ 1 (Dkt. No. 34).

Defendants perform customer acquisition services through digital marketing campaigns to connect their advertiser clients with the consumers they seek to reach. *Id.* ¶ 25. For their business

model to be profitable, Defendants must attract consumers at scale to their digital media properties, including their websites. *Id.* ¶ 26. In order to attract a sufficient number of consumers to satisfy their advertiser clients, Defendants rely on, and are dependent upon, publishers or affiliate networks to drive consumers to their digital media properties and websites. *Id.* ¶ 29. Recently, Defendants expanded their usage of text message marketing and have become more dependent on third-party providers that control the dissemination and deliverability of such communications. *Id.* ¶ 32. Defendants are admittedly aware that their publishers use unapproved marketing channels to drive users to their websites, which exposes Defendants to liability under the TCPA. *Id.* ¶ 38. Despite this knowledge and risk, Defendants made an informed business decision to violate, and turn a blind eye to their agents' violations of, consumer protection and telemarketing laws in the pursuit of profits.

Each Plaintiff received one or more unsolicited telemarketing text message from Defendants and/or their agents. *See id.* ¶¶ 44–123. At the time Defendants or their publishers sent the unlawful text messages, each Plaintiff's telephone number was registered on the National Do-Not-Call Registry. *See id.* ¶¶ 8–19. Annoyed and harassed by these invasions of their privacy, Plaintiffs filed a complaint alleging violations of the TCPA, its implementing regulations, and related state laws.

In their Motion, Defendants argue that Pepper visited http://signup.finddreamjobs.com (the "Job Site") on October 30, 2017, where she input her telephone number and identifying information, and agreed to an arbitration agreement. She did none of these things. *See* Declaration of Terri Pepper ("Pepper Decl.") ¶¶ 6–13, attached hereto as Exhibit 1. Nor did she ever authorize anyone to do so on her behalf. *Id.* At no time did Pepper ever agree to the alleged arbitration agreement. *Id.*

Defendants also contend that Bryant visited http://onlinepromousa.com (the "Promotion Site") on August 1, 2016, where he input his telephone number and identifying information, and agreed to an arbitration agreement. He did none of these things. *See* Declaration of Julius Bryant ("Bryant Decl.") ¶¶ 6–13, attached hereto as Exhibit 2. Nor did he ever authorize anyone to do so on his behalf. *Id*. At no time did Bryant ever agree to the alleged arbitration agreement. *Id.*

## III. LEGAL STANDARD

The parties agree that arbitration is a creature of contract. *See* Dkt. 47 at 4. "[A] party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960). "[A] court may order arbitration of a particular dispute only where the court is satisfied that the parties agreed to arbitrate that dispute." *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 297 (2010).

Because arbitration is a matter of consent, the general presumption in favor of arbitrability does not apply to the threshold determination of whether there is an agreement to arbitrate between the parties. *See Applied Energetics, Inc. v. New Oak Capital Mkts., LLC*, 645 F.3d 522, 526 (2d Cir. 2011) ("[W]hile doubts concerning the scope of an arbitration clause should be resolved in favor of arbitration, the presumption does not apply to disputes concerning whether an agreement to arbitrate has been made."). *Abram Landau Real Estate v. Bevona*, 123 F.3d 69,72 (2d Cir. 1997).

In the context of a motion to compel arbitration, courts apply the same standard used at summary judgment. *See Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003) ("the summary judgment standard is appropriate in cases where the District Court is required to determine arbitrability . . . ."). Thus, the party seeking to compel arbitration bears the burden of coming forward with evidence establishing that no genuine dispute of material fact exists such that the

parties' dispute must be decided by an arbitrator. *See Jillian Mech. Corp. v. United Serv. Workers Union Local 355*, 882 F. Supp. 2d 358, 364 (E.D.N.Y. 2012) (On a motion to compel arbitration, the moving party has the burden of proving that an agreement to arbitrate exists.).

## IV. ARGUMENT

### A. Plaintiffs Did Not Agree to Arbitrate, and Never Visited the Job Site or the Promotion Site Prior to Filing This Lawsuit

Defendants cannot carry their burden to show Pepper or Bryant agreed to arbitrate. Pepper never visited the Job Site before she heard about it during the course of this litigation. Pepper Decl. ¶ 6. Bryant never visited the Promotion Site before he heard about it during the course of this litigation. Bryant Decl. ¶ 6. Whomever (if anyone) made the alleged visits described by Defendants' General Counsel, it was *not* Pepper or Bryant.

With respect to Pepper, she would not have even visited "signup.finddreamjobs.com" or any other job website because, months earlier, she *retired* from the workforce and has not sought employment positions since May 2017. Pepper Decl. ¶ 9. In addition, she would never identify her city and state as Magnolia, Texas, and did not do so as alleged by Defendants. *Id.* ¶¶ 11–12. Pepper lives in The Woodlands, Texas, a township within four separate cities, including Magnolia. *Id.* ¶ 10. Pepper always identifies her city and state as The Woodlands, Texas. *Id.* ¶ 11.

With respect to Bryant, he never identified himself as Female, and he was not born on the alleged birthdate, that appears on Exhibit "C" to the Barsky Declaration. Bryant Decl. ¶¶ 8-9. In addition, the 1600 Chestnut Street, Dallas, Texas 75226 address allegedly provided by Bryant is, in fact, the address for the Dallas Marshal's Office and City Detention Center. *Id.* ¶ 10. Bryant ended his employment as a Deputy Marshal in Dallas in approximately 2013, and did not work at, live at, or receive mail at this address in August 2016, nor did he state or authorize anyone else to state that he did. *Id.* ¶¶ 11–12.

In addition to these glaring inaccuracies, Defendants make contradictory assertions in their Motion. The Barsky Declaration alleges that Bryant visited "OnlinePromotionsUSA.com", a website Defendants say they own. Dkt. 48 ¶¶ 23–24. However, that allegation is belied by what is shown in Exhibit "C" to the Barsky Declaration. Barsky claims Exhibit "C" shows what was "captured" on the Job Site as it relates to Bryant, but Exhibit "C" references an entirely different website, "http://www.onlinepromousa.com."[1]

When Plaintiffs identified this discrepancy in their prior response to Defendants' first motion to compel arbitration (Dkt. 33, 35), Defendants bizarrely suggested that this inconsistency somehow does not make a difference because the websites appeared "similar" in 2022. Defendants provided no information to show the websites were the same when Bryant was *alleged* to have visited them (i.e., August 1, 2016). Defendants have yet to clarify why they continue to maintain under oath that Bryant visited one website, yet they submit "supporting" documents alleging he visited a different website. Defendants did not add any supplemental evidence to clarify this glaring error, despite having the opportunity to do so.

Defendants' entire theory of the existence of an agreement to arbitrate rests on the premise that Plaintiffs actually visited the alleged websites. Because Plaintiffs did not visit the websites as Defendants allege, there is no agreement to arbitrate. Thus, Pepper and Bryant were not required to contact Defendants to commence arbitration in their local areas, and they did not waive their right to bring or participate in a class action lawsuit against Defendants.

Defendants' Motion relies on scant and conclusory evidence that Plaintiffs made an alleged visit to, and entered information attributable to them, on websites. Defendants offer no evidence

---

[1] Bryant did not visit *either* website on the date alleged by Defendants, or at any time prior to this lawsuit. Bryant Decl. ¶¶ 6–7, 13, Exhibit 2.

that they or their agents do anything to verify that telephone numbers and consumer information is entered accurately or by the rightful owners of that information. Defendants provide no explanation for why they or their agents would send spam texts unrelated to job opportunities to Pepper's telephone number that was allegedly obtained in conjunction with a patently fake address. *See* Dkt. 48 at 12 ("Address" has no house number or street).

Defendants' approach is all the more cavalier in light of Defendants' long history of using consumer information without the consent of the consumer and falsifying records. For example, just recently, the New York Attorney General found that Fluent used consumer information (without the consumers' knowledge or consent) to submit public comments to government regulators and legislators, and then falsified documents and records:

**FINDINGS OF NYAG**

> 1. From April 2016 through November 2018, **Fluent was responsible for the submission of approximately ten million letters and public comments to government regulators and legislators** – across dozens of official proceedings on a range of policy issues – **purportedly signed by individuals who in fact had neither been shown the messages sent using their identities, nor been told any such messages would be sent on their behalf**.
>
> 2. **Fluent engaged in this misconduct using its websites**, where consumers can earn rewards, such as a gift card or sweepstakes entry, in exchange for providing contact information and clicking through several sequential webpages to answer survey questions and view marketing offers. Starting in 2016, Fluent represented to advocacy groups and other clients seeking to influence regulations and public policy that it could use Fluent's heavily trafficked sites – which Fluent typically uses for marketing on behalf of commercial clients – to solicit users in advocacy campaigns that would generate enormous volumes of letters and comments to government regulators and legislators.
>
> 3. **Contrary to its representations to consumers and clients**, however, NYAG found that **Fluent did not actually solicit or collect permission from anyone to have letters and comments sent to the government on their behalf**. Instead, **Fluent took**

> **information collected from millions of consumers** and – **without telling those consumers – gave it to advocacy clients, misrepresenting that the consumers had expressly agreed to have their names and addresses used to sign the letters and comments to support or oppose government policies**.
>
> 4. **To conceal its misconduct, Fluent made further misrepresentations** to at least two of its advocacy campaign clients, **and created records falsely showing that it had presented advocacy messages to consumers**.
>
> 5. The difference between Fluent's representations to consumers and clients on one hand, and its practice of providing advocacy leads without consumers' knowledge or authorization on the other hand, was known and openly discussed by at least a dozen employees in multiple business units.

*In the Matter of Investigation by Letitia James, Attorney General of the State of New York, of Fluent, Inc.*, Assurance No. 21-027 (May 6, 2021) (emphasis added).[2]

As they have previously done, Defendants will likely attempt to attack and discredit these Plaintiffs because they have brought more than one TCPA lawsuit. *See* Dkt. 40 at 7–9. The law does not place a limit on the number of times a victim may obtain redress for different violations of the law from malefactors engaged in the "scourge of modern civilization." *See Barr v. Am. Ass'n of Political Consultants, Inc.*, 140 S. Ct. 2335, 2344 (2020) (quoting 137 Cong. Rec. 30821(1991)). Nevertheless, it is Defendants—not Plaintiffs—who have a documented history of using consumer information to create and support documents that were not authorized by the consumer.

Defendants have failed to show Plaintiffs agreed to arbitrate. At the very least, Plaintiffs' Declarations are sufficient to warrant that discovery be conducted into the issue of the formation of the alleged arbitration agreement. *See Accardo v. Equifax, Inc.*, No. 18-5030, 2019 WL 5695947, at *7 (E.D.N.Y. Aug. 9, 2019) (denying a motion to compel arbitration based on the plaintiff's affidavit stating that he did not enter into an agreement containing an arbitration

[2] https://ag.ny.gov/sites/default/files/fluent_aod_-_final_-_fully_signed.pdf.

agreement); *see also Hellstrom v. U.S. Dep't of Veterans Affairs*, 201 F.3d 94, 97 (2d Cir. 2000) ("Only in the rarest of cases may summary judgment be granted against a plaintiff who has not been afforded the opportunity to conduct discovery.").

**B. The Design and Content of the Job Site and Promotion Site Do Not Give Reasonable Notice of the Arbitration Provision**

Even accepting Defendants' representations that their "recreations" of the Job Site and Promotion Sites are accurate (*see* Dkt. No. 48 at ¶¶ 9–11),[3] the content of these webpages does not give reasonable notice of the arbitration provision.

Courts enforce contracts accepted by an electronic "click" on a website only if "the layout and language of the site give the user reasonable notice that a click will manifest assent to an agreement." *Sgouros v. TransUnion Corp.*, 817 F.3d 1029, 1033–34 (7th Cir. 2016). To create an enforceable online contract, the user must be given "actual or constructive knowledge of a website's terms and conditions." *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1176 (9th Cir. 2014) (citation omitted). "Reasonably conspicuous notice of the existence of contract terms and unambiguous manifestation of asset to those terms by consumers are essential if electronic bargaining is to have integrity and credibility." *Specht v. Netscape Commc'ns Corp.,* 306 F.3d 17, 35 (2d Cir. 2002). Courts consider "the conspicuousness and placement of the 'Terms of Use'

[3] The pages attached to the Barsky Declaration allegedly depicting the websites at issue (Dkt. No. 48 at 13, 24-26) are not actual copies of these sites as they existed at the times the Plaintiffs are alleged to have visited them. For "effect," Defendants created them and input the personal information of Plaintiffs Bryant and Pepper into these "recreations." *See* Dkt. No. 48 at 13, 24-26. Defendants provide no information on how this process occurred, how the code was stored, or any other information to gauge the reliability of the information. Because these exhibits are not authenticated, they should not be considered.

hyperlink, other notices given to users of the terms of use, and the website's general design" in determining "whether a reasonably prudent user would have inquiry notice of a browsewrap agreement." *Id.* "Several nonexhaustive examples of general characteristics that make a term conspicuous include using larger and contrasting font, the use of headings or capitals, or somehow setting off the term from the surrounding text by the use of symbols or other marks." *Cullinane v. Uber Techs, Inc.*, 893 F.3d 53, 62 (1st Cir. 2018).

### 1. The Job Site Did Not Provide Reasonably Conspicuous Notice of the Arbitration Provision

Defendants cannot meet their burden with respect to Pepper. First, Defendants provide a screenshot that appears to be a "mobile webpage." Defendants provide no testimony that Pepper viewed this webpage on a mobile device, or that this is *definitely* what she would have seen if she had. Even if this "recreated" page is what would have been presented on a mobile device, the only hyperlinks to the Terms and Conditions appear in fine print between three large prominent data input fields and a large green "GET STARTED" button of similar size to the data input fields. Even as enlarged in Defendants' exhibit, the language Defendants seek to enforce is barely legible.




Dkt. 48 at ¶ 16.

Defendants also cannot show that by clicking the "GET STARTED" button, Pepper was manifesting her assent to a contract mandating arbitration. As shown above, there is a checkbox that indicates the user wishes to receive "daily email alerts for new jobs in my area" but this checkbox it is not associated with any agreement to terms. Moreover, based on the recreated page, the user was presented with two options, (1) GET STARTED or (2) Skip to Results. Defendants do not allege which, if any, button Pepper clicked. In fact, Barsky's Declaration, while it may seek to imply that she had, never actually <u>states</u> that she in fact "clicked" either of these options. *See* Dkt. No. 48 ¶¶ 8–22.

Defendants fail to inform this Court that another district court analyzing a similar Fluent webpage found that **no agreement was formed**. *See Anand v. Heath,* No. 19-cv-00016, 2019 U.S. Dist. LEXIS 109076 (N.D. Ill. June 28, 2019). In *Anand*, Fluent alleged that the plaintiff "registered on the website www.retailproductzone.com and completed a survey on that website to receive a free gift card." *Id.* at *2. When the plaintiff "navigated through the www.retailproductzone.com website in 2017, the words 'I understand and agree to the <u>Terms & Conditions</u> which includes mandatory arbitration and <u>Privacy Policy</u>' were displayed above a 'Continue' button" as depicted in the image displayed in the decision. *Id.* at *3. Like here, the defendants offered "no evidence that [the plaintiff] clicked the 'Continue' button and ultimately completed a survey on the website." *Id.* at *3–4.

The court concluded that "Anand was not placed on reasonable notice that she was manifesting assent to the terms and conditions by clicking the 'Continue' button." *Id.* at *9. The court noted that the configuration used by Fluent "presents what can best be described as a hybridwrap agreement because the terms and conditions were hyperlinked rather than displayed

to the user in full, and the user's ability to continue through the site was not conditioned on her express assent to the terms and conditions." *Id.* at *4. The court explained that:

> [c]ourts typically "will give effect to hybridwrap terms where the button required to perform the action manifesting assent … is located directly next to a hyperlink to the terms and a notice informing the user that, by clicking the button, the user is agreeing to those terms. … The more the hybridwrap design diverges from this basic layout—such as by placing the notice further away from the action button, cluttering the screen with potentially distracting content, or omitting the language explicitly saying that by performing [the] action the user agrees to be bound by the terms—the less likely courts are to find that inquiry notice has been provided."

*Id*. at *11-12 (ellipses in original) (quoting *Nicosia v. Amazon, Inc.*, 384 F. Supp. 3d 254, 266 (E.D.N.Y. 2019)). The court concluded that Fluent's "hybridwrap agreement here is unenforceable because nothing expressly linked the 'I understand and agree . . .' language to the 'Continue' button. There was no 'notice' informing the user that, by clicking the button, the user is agreeing to those terms." *Id.* (quoting *Nicosia*, 384 F. Supp. 3d at 266).

Similarly here, the "GET STARTED" button on the Job Site is not expressly linked to the statement about the Terms and Conditions. A reasonable user would understand that by clicking the button, she was continuing the process to view job results. Further, the checkbox that is actually checked was limited only to receiving "email alerts" and was not tied to the Terms and Conditions. Had Defendants wanted to make sure that visitors to the webpage saw the hyperlink, they could have (for instance) provided an additional checkbox next to text asking the user to signify agreement to the Terms and Conditions. Defendants did not do so, nor did they take any other steps to provide reasonable notice of the terms, or any warning that by clicking the "GET STARTED" button, the user was agreeing to these terms. As in *Anand*, Defendants failed to give users constructive notice, and no agreement was formed.

On April 5, 2022, the Ninth Circuit came to the same conclusion with respect to Fluent's arbitration agreement. In *Berman v. Freedom Fin. Network, LLC*, No. 20-16900, 2022 U.S. App. LEXIS 9083, at *7 (9th Cir. 2022), the court evaluated nearly identical language sandwiched between a zip code box and a "CONTINUE" button that were comparatively the same size. The court concluded that "the design and content of the webpages [plaintiffs] visited did not adequately call to their attention either to the existence of the terms and conditions or the fact that, by clicking on the "continue" button, they were agreeing to be bound by those terms." *Id.* at *19. The court specifically took issue with the size of the font when compared with the rest of the page and the deemphasis of the important text by the overall design of the webpage. *Id.* at *15. The court further faulted Fluent for its hyperlink that was in the same font color—not depicting it was an actual link. *Id.* at * 16. The Court also explained that the plaintiffs did not take any action that "unambiguously manifested their asset to be bound by the terms and conditions" because the "Continue" button did not provide any notice to the user of the legal significance of the action of clicking this button. *Id.* at *16–19.

Defendants' attempt to liken the lack of reasonably conspicuous notice in this matter to the notice provided in *Meyer v. Uber Techs., Inc.*, 868 F.3d 66 (2d Cir. 2017), is unavailing. In *Meyer*, the user was required to select a button to register for a user account, and adjacent to that button, there was a warning which stated "By creating an Uber account, you agree to the TERMS OF SERVICE & PRIVACY POLICY." *Id.* at 78. The Second Circuit relied upon this link to determine that a reasonably prudent smartphone user would understand that the terms were connected to the creation of an account. *Id*. To contrast, Defendants did not take any other steps to provide reasonable notice of the terms, or any warning that by clicking the "GET STARTED" button, the user was agreeing to these terms. This Court has previously determined that in the context of

hyperlinks on webpages, "[p]roximity to the top of a webpage does not necessarily make something more likely to be read in the context of an elaborate webpage design." *Nicosia*, 834 F.3d at 237; *see also Nguyen*, 763 F.3d at 1179 ("[E]ven close proximity of the hyperlink to relevant buttons users must click on—without more—is insufficient to give rise to constructive notice."); *see also Soliman v. Subway Franchisee Advert. Fund Tr., Ltd.*, 999 F.3d 828, 837 (2d Cir. 2021) ("we have emphasized the importance of clearly signaling to the consumer in some fashion that, by continuing with the transaction or by using a website, she will be agreeing to the terms contained in an accompanying hyperlink."). Here, the Job Site possesses the same flaws identified by the Second Circuit in *Soliman* and the Ninth Circuit in *Berman*. There was no reasonable notice of the terms sought to be enforced.

### 2. The Promotion Site Did Not Provide Reasonably Conspicuous Notice of the Arbitration Provision

Defendants cannot meet their burden with respect to Bryant. Barsky's Declaration provides no information about the operation of the Promotion Site, such as whether a user could continue forward without checking the "Please add me" checkbox, and whether there is evidence that box was actually checked during the incident alleged in the Declaration. Based on the information provided by Barsky, it is unclear how he was able to determine that the checkbox was checked, or that it was in fact checked. That information does not appear on his Exhibit "C". *See* Dkt. No. 48 at 23-26. Most importantly, Defendants, through Barsky, do not clearly state whether or not Bryant clicked the "Submit" button. *See id.* at ¶¶ 23–33. While they may seek to imply that he had, Barsky never actually *states* that Bryant "clicked" "Submit." *See id* at ¶¶ 23–33. Without any action by the user to click the "Submit" button, there could be no manifestation of assent to the terms.

As with the Job Site, the Promotion Site's references to the Terms & Conditions appear in fine print, in the same color as the other text between prominent data input fields, and is dwarfed by a large red "SUBMIT" button. The reference is barely legible even when straining to read the language provided on Defendants' enlarged exhibits.

Congratulations!




Dkt. 48 at ¶ 27.

In addition, as with the Job Site, the Promotion Site's checkbox relates to email marketing. The Promotion Site's checkbox does differ, however, in that it also includes assent to the Privacy Policy—but *not* the Terms & Conditions, upon which Defendants rely. There is no reasonably conspicuous notice, and no unambiguous manifestation of assent. *See Berman*, 2022 U.S. App. LEXIS 9083, at *15–19 (9th Cir. 2022).

## V. CONCLUSION

For the reasons set forth above, Plaintiffs request that Defendants' Motion to Compel Arbitration be denied in its entirety, and for such other relief as the Court deems appropriate under the circumstances, such as allowing discovery on certain issues of fact that cannot be resolved on a motion to compel arbitration, and allowing Plaintiffs leave to amend the FAC if necessary.

DATED: April 8, 2022

Respectfully submitted,

/s/ Javier L. Merino
Javier L. Merino, Esq. (5294699)
*jmerino@dannlaw.com*
DannLaw
1520 U.S. Highway 130, Suite 101
North Brunswick, NJ 08902
(201) 355-3440 telephone
(216) 373-0536 facsimile

Thomas A. Zimmerman, Jr. (*pro hac vice*)
*tom@attorneyzim.com*
Zimmerman Law Offices, P.C.
77 W. Washington Street, Suite 1220
Chicago, Illinois 60602
(312) 440-0020 telephone
(312) 440-4180 facsimile
*www.attorneyzim.com*

Max Morgan (*pro hac vice*)
*Max.morgan@theweitzfirm.com*
Eric Weitz (*pro hac vice*)
*Eric.weitz@theweitzfirm.com*
The Weitz Firm, LLC
1528 Walnut Street, 4th Floor
Philadelphia, PA 19102
(267) 587-6240 telephone
(215) 689-0875 facsimile

*Counsel for Plaintiffs and the Putative Classes*

**CERTIFICATE OF COMPLIANCE**

The undersigned counsel certifies that this memorandum of law complies with the formatting rules set forth in the Individual Practices of Judge John G. Koeltl and contains 4,992 words.

*/s/ Javier L. Merino*
Javier L. Merino

Dated: North Brunswick, New Jersey
April 8, 2022