

1515 MARKET STREET, #1100
PHILADELPHIA, PENNSYLVANIA  19102
(267)587-6240

MAX S. MORGAN, ESQUIRE
max.morgan@theweitzfirm.com

October 27, 2023

*Via CM/ECF*
Honorable Barbara C. Moses
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, New York 10007

      **Re: Plaintiffs' Request for Discovery Conference,**
         *Pepper v. Fluent, Inc.,* **No. 1:21-cv-06581-JGK (BCM)**

Dear Judge Moses:

      Plaintiffs request a discovery conference on Defendants Fluent, Inc. ("Fluent") and Reward Zone USA, LLC's ("Reward Zone") (together, "Defendants") responses to Plaintiffs' discovery requests. Immediately after the stay on merits discovery was lifted and Defendants' motion to compel arbitration was denied (Dkt. 67, p. 25), Plaintiffs served their first set of discovery on July 18, 2023. *See* Ex. A. Plaintiffs provided Defendants with extensions of time based on Defendants' representations that they were actively searching for and would produce documents. On September 22, 2023, Defendants served their responses. *See* Ex. B. Defendants produced 14 pages of documents, many of which were already produced during the evidentiary hearing on arbitration. The written responses are replete with categorical, boilerplate and unsupported objections. "Boilerplate objections . . . persist despite a litany of decisions from courts, including this one, that such objections are improper unless based on particularized facts." *Fischer v. Forrest*, 14CIV1304PAEAJP, 2017 WL 773694, at *3 (S.D.N.Y. Feb. 28, 2017). On October 20, 2023, Defendants produced an additional 53 pages of documents.  The parties exchanged letters and held a teleconference on October 17 and 23[1], but are at an impasse that requires judicial intervention.

**1.**     <u>**Identifying Defendants' Publishers (Interrogs. 3–8, 16, RFPs 5-6, 12)**</u>: Plaintiffs each received text messages that included hyperlinks that, when clicked, took Plaintiffs to Defendants' websites. Plaintiffs produced screenshots of the text messages and videos showing Plaintiffs clicking the links and being directed to Defendants' websites. Defendants primarily rely on third parties referred to as "Publishers" to drive traffic to their websites. Because Defendants deny sending the text messages, Plaintiffs believe that Defendants' Publishers were responsible for the text messages they received. Accordingly, Plaintiffs seek the identities of Publishers. Defendants know the identities of their Publishers, but claim they cannot identify the specific Publishers involved. Defendants refuse to attempt to contact any Publishers to simply ask if they were involved with the messages at issue. In addition, Plaintiffs have provided Defendants with suggestions as to the types of information and records Defendants should review. Defendants

---

[1] Max Morgan, Javier Merino (10/17 only), Jeff Blake, Sean Moynihan, Jay Ramsey, and Daniel Chin attended.

refuse to identify all Publishers that were working with Defendants over the relevant time period, preventing Plaintiffs from conducting discovery as to the Publishers.

Defendants are "expected to conduct a reasonable search of such non-custodian sources likely to have relevant information." *Raine Group LLC v. Reign Capital, LLC*, 21CV1898JPCKHP, 2022 WL 538336, at *2 (S.D.N.Y. Feb. 22, 2022). There are several possible ways to obtain the identities of the specific Publishers involved. Plaintiffs seek to compel Defendants to: (1) send an inquiry to all Publishers requiring that them to state whether were involved in sending the text messages or operating any website referenced in the FAC, (2) search Defendants' web server access, activity, and referrer logs for key time periods and other website referral analysis that Defendants maintain; (3) search Defendants' Publisher application compliance review documents, and (4) provide Plaintiffs with a list of all Publishers active at the time Plaintiffs received the text messages.

Defendants claim they need the full URLs associated with Plaintiffs' arrival at their websites to identify the Publishers by the URL's affiliate ID. It is apparent Defendants failed to preserve these URLs, despite the FAC including screenshots showing the complete text messages, including the initial hyperlinks (which are now disabled), the originating phone number, and the progression of websites leading to Defendants' websites. Defendants also failed to instruct their Publishers to preserve these links and associated information. Defendants also never advised Plaintiffs that the full URLs of Defendants' websites could be helpful in identifying the responsible Publishers. The links are now disabled. Nevertheless, Plaintiffs believe Defendants have sufficient information to identify the Publishers involved but are shirking their discovery responsibilities. In this very litigation, Defendants have asserted that, "[f]or each consumer interaction generated by any of the advertising, Defendants store in its database numerous data points about that session, including personal information provided by the consumer, survey responses, IP addresses, click data, user agent data, and a host of other data points," including "information related to the publisher responsible for the advertising that helped make that connect with the consumer." *See* Defs' General Objection No. 14. As a result, Defendants' website server, activity, and referral logs will have records of Plaintiffs' visits depicted in the videos Plaintiffs produced to Defendants. Defendants are also able to obtain analytical data regarding the websites that drove Plaintiffs to their websites, including the ones alleged in the FAC. Because Defendants use this data to compensate Publishers, it obviously exists and should be searched and analyzed.[2]

Moreover, Defendants admit they "actively monitor [] publishers' activities and have adopted more stringent publisher requirements and instituted periodic review of advertising creatives for our largest publishers."[3] According to the FTC, Defendants are supposed to exercise oversight over publishers, including establishing compliance guidelines, using marketing materials provided by Defendants without edits or modifications, unless Defendants give prior written consent, content-based restrictions on certain terms such as "congratulations" and "won." "In

---

[2] Plaintiffs have sought to inspect Defendants' systems. RFPs 34–35. Although Plaintiffs are not seeking to compel compliance with these requests for inspection at this time, Plaintiffs reserve the right to conduct such an inspection pending the outcome of this motion to compel and the documents and information produced. Perhaps a third-party expert may have greater success that Defendants at searching for the necessary information.

[3] *See* Fluent, Inc. Form 10-K (Mar. 15, 2023), https://investors.fluentco.com/static-files/62a6c3d4-89d0-4d61-b572-aba540749f70 (Last Visited October 25, 2023).

Hon. Barbara Moses
Oct. 27, 2023
Page 3

communications with regulators and other third parties, Defendants have claimed to aggressively police compliance with their creative guidelines and publisher contracts." Complaint, *Fed. Trade Comm'n v. Fluent, Inc.*, Case No. 9:23-cv-8104-AMC (S.D. Fla July 17, 2023) (ECF No. 1).

Defendants should be compelled to conduct a reasonable search in their server logs and in their application review and approval documents for the identities of the Publishers who are connected to the offending text messages and websites. Defendants must at the very least attempt to ask their Publishers whether they were involved in one or more text messages, referrals, websites or ads in the FAC. As shown by the documents produced by Defendants, Defendants have authority over their Publishers to demand information, conduct compliance reviews, and require that Publishers modify their ads. As a result, Defendants have possession, custody, and control over the relevant information whether in their own systems or in the hands of one or more Publishers.

Given Defendants' professed inability to identify the Publishers who texted Plaintiffs and unjustified and wrongful denial of Plaintiffs' request to send inquiries to their Publishers simply asking which ones sent the text messages in the FAC, Plaintiffs are entitled to a complete list of such publishers so that they can compel responses through subpoenas, if necessary. At the very least, Defendants should be required to disclose the identities of their approved text messaging vendors, so that Plaintiff can issue subpoenas to them.

**2.      Identifying Fluent employees who approve Publishers and transactions (Interrogs. 9, 10, 13)**: Defendants' references to Fluent's "Compliance" Team, "Media" Team, and "Finance" Team are insufficient, evasive, and nonresponsive. The Interrogatories call for identification of "individuals." These persons are witnesses and their identities are relevant.

**3.      Plaintiffs' information and activity (RFPs 2–4)**: Defendants state that they have no responsive information concerning four Plaintiffs. Defendants have information concerning two Plaintiffs, Julius Bryant and Terri Pepper. Defendants produced "registration information" on these individuals related to their motion to compel arbitration, but have not produced any additional information that they have in their databases attributed to these individuals, such as user activity, the sources of the information, and to whom Defendants shared or sold any information on them.

**4.      Publisher conversions (RFP 7)**: This request seeks documents that show the number of times each Publisher was credited with directing a user to Defendants' websites. Defendants argue that this RFP is unduly burdensome. "While the requesting party bears the initial burden of demonstrating any possibility of relevance sufficient to warrant discovery, once that showing is made, the party resisting discovery bears the burden of demonstrating that, despite the broad and liberal construction afforded the federal discovery rules, the requests are irrelevant, or are overly broad, burdensome, or oppressive." *Royal Park Investments SA/NV v. Deutsche Bank Nat'l Tr. Co.*, 14CV04394AJNBCM, 2016 WL 4613390, at *7 (S.D.N.Y. Aug. 31, 2016) (internal quotes and citations omitted). This request is hardly burdensome and is proportional to the needs of the case because it will help to identify the scope of the potential classes. If a program cannot easily be queried to provide the total conversions by Publisher, then perhaps Defendants can use the payments to Publishers as a way to calculate the number of conversions. In *Berman v. Freedom Fin. Network, LLC*, 400 F. Supp. 3d 964, 984 (N.D. Cal. 2019), the plaintiffs used the unusually

high conversion rate to prove Defendants' knowledge of illegitimate activity. This information may also help identify the Publishers responsible for the text messages here.

5.      **Publisher contracts, negotiations, and due diligence (RFPs 9, 10, 21)**: Defendants must produce documents relating to agreements and communications for their affiliates, web traffic platforms, and Publishers. This information is relevant and discoverable and pertains to the class claims. Plaintiffs are entitled to a complete production of the requested contracts and other documents so that they can attempt to identify the responsible parties Defendants refuse to contact. Documents relating to Defendants' due diligence would identify the Publishers behind the websites identified in the FAC. They are also relevant to establish Defendants' knowledge, participation, and intent to violate telemarketing laws through the actions of their Publishers.

6.      **Defendants' oversight, handling of complaints, knowledge, approval, and intent (RFPs 11, 13, 14, 17, 21, 22, 24, 27, 29, 31–33)**: "An objection must state whether any responsive materials are being withheld on the basis of that objection." *CapRate Events, LLC v. Knobloch*, 17-CV-5907-NGG-SJB, 2018 WL 4378167, at *2 (E.D.N.Y. Apr. 18, 2018). Defendants' responses are unclear as to what is being produced and what is being withheld based on objections. Defendants' conclusory assertions of undue burden are unsupported and should be overruled. Defendants are not allowed to "use the overbreadth objection[s] to produce nothing at all," but must produce documents "that fit within a reasonable construction." *Id*. As for Defendants' objection to RFP 16 on evidentiary grounds, that does not supply a basis for withholding documents. Documents relating to troublesome Publishers is relevant to the inquiry into who is responsible for texting Plaintiffs, Defendants' knowledge and intent, and to identify fact witnesses.

7.      **Documents relating to government investigations (RFPs 18, 19, 30)**: Defendants have been subject to a number of civil lawsuits and governmental investigations and enforcement actions regarding the same telemarketing practices at issue in the FAC. Some of the same websites at issue here are identified in the government investigations. Defendants' objections regarding confidentiality and uninvolved third parties are unclear and fail to appreciate the fact that a confidentiality order can be entered, addressing any supposed concern.

8.      **Internal communications and business strategy documents (RFPs 8, 23)**: Defendants refuse to produce documents based on boilerplate objections. Plaintiffs proposed that the parties discuss a mutually agreeable ESI search protocol, including custodians and search terms. Defendants refused. Communications and documents concerning, analyzing, and evidencing the effectiveness and conversion rates of various marketing practices of their Publishers is relevant to show Fluent's participation and knowledge.

9.      **Documents relating to server logs and user activity (RFPs 36, 37)**: These RFPs are relevant to identify third parties who possess relevant information (i.e., the publishers identified as referrals), to establish the elements of class certification (such as numerosity, commonality), to show Defendants' knowledge of its Publishers' conduct, and to establish a pattern and practice.

Hon. Barbara Moses
Oct. 27, 2023
Page 5

                          Respectfully submitted,

                          **THE WEITZ FIRM, LLC**

                          MAX S. MORGAN, ESQUIRE