# SheppardMullin

Sheppard, Mullin, Richter & Hampton LLP
1901 Avenue of the Stars, Suite 1600
Los Angeles, California 90067-6055
310.228.3700 main
310.228.3701 fax
www.sheppardmullin.com

310.228.2259 direct
jramsey@sheppardmullin.com

File Number: 72AS-380223

January 5, 2024

**VIA ECF**
Honorable Barbara C. Moses
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, New York 10007

Re:   Discovery Conference, *Pepper v. Fluent*, No. 1:21-cv-06581-JGK (BCM)

Dear Judge Moses:

Defendants Fluent, Inc. and Reward Zone USA, LLC (collectively, "Fluent") respond to Plaintiffs' Request for Discovery Conference, filed on January 2, 2024.

## Background On Case And Update Since Last Discovery Conference

As Fluent explained in connection with the last discovery conference, this is not a typical TCPA case.  Plaintiffs all received text messages, ***but none of them*** were sent by Fluent.  Rather, the different text messages were sent by ***unknown parties***.  The messages were also sent on different dates, from different phone numbers, each including a different message and a different website link, ***none of which*** linked to Fluent's websites.  The website links went to different websites, and, after Plaintiffs purportedly landed on these non-Fluent websites, each navigated through a series of different and varied questions, screens, clicks, spinning wheels, and other pages, sometimes pressing the back button on their web browser, sometimes clicking ads, and sometimes visiting yet other non-Fluent sites.  After confusing and circuitous routes, all unlike any of the others, each Plaintiff (or their representative) somehow ended up on a Fluent-operated website.

All in, there are thirty unique fact patterns involving six different Plaintiffs and seven different proposed classes.  Just one example shows how atypical this case is.  Plaintiff DeMya Johnson (Dkt. 34, ¶¶ 112-119) claims to have received a text message from (803) 686-4049 on December 23, 2020.  It contained a link (jjmhb.me/wnNUm9zX4B), which she purportedly pressed (or someone pressed for her).  That link opened an internet browser, and then "automatically and instantaneously" opened a series of intermediary domains (none operated by Fluent), including jjmhb.me, torialaty.com, sorisy.com, go.bosquinte.com, and eventually landed on cloud-inbox.online, a website not operated by or affiliated with Fluent, that offered a chance at prizes for completing a survey. After completing the survey and clicking other buttons, Plaintiff (or her representative) was directed to chancetowins.com, another non-Fluent website.  The "user" then "selected the back button [in their web browser] several times," and ended up on instantprizewinner.com, another non-Fluent website.  That website had an advertisement that, if clicked, took the "user" to Fluent's website.  It is perfectly legal for Fluent to buy ad space on websites.  The fact that one of those websites may be connected to some other website, which is connected to some other website, and so on, and some party twenty steps earlier sent a text message, does not mean Fluent can be held liable for the purported TCPA violations.

**SheppardMullin**

To be clear, Fluent did not send the text messages and did not authorize them.  Fluent has produced its policies, procedures, and contractual documents clearly showing that it did not allow text messages at all, except in narrow circumstances, and then, only if certain criteria were met.  None of the messages at issue resemble anything that was permitted by Fluent.  Plaintiffs are thus arguing that Fluent, despite having not authorized these messages, somehow knew about them and did nothing to stop them.

The core problem, which the Court appreciated at the last discovery conference, is that neither party can figure out who sent the messages and may never be able to do so.  When Plaintiffs (or someone on their behalf) visited Fluent's website, they did not enter any of their personal information and, as a result, Fluent cannot tie any of the visits to anything in its records.  Similarly, although Plaintiffs recorded their interactions with the messages and their circuitous routes through the internet, Plaintiffs did not retain the full website URLs of the Fluent websites they ultimately visited.  These full URLs are the most important data points because full URLs generally include evidence that would allow Fluent to tie a website visit to something in its records.  Plaintiffs' failure to maintain and provide this URL information is a big reason that the parties haven't been able to get anywhere.

At the last discovery conference, the parties and the Court discussed at length what information Fluent could provide to identify the "last hop" publishers – meaning, not the entities that sent the text messages (which Fluent has no way of doing), but the entities who operated the website immediately before Plaintiffs landed on Fluent's website.  The thought is that Plaintiffs may be able to subpoena these entities, slowly working their way back through the circuitous routes taken to Fluent's website, eventually back to the original sender of the text.  Of the 30 text messages, Fluent was able to identify what it believes is the "last hop" publisher in connection with 23 of the texts.  Fluent cannot be certain of this information, but it is the best information Fluent has.  For the remaining 7 texts, Fluent was able to identify publishers that drove traffic to the sites at issue on the dates at issue.  All in, Fluent identified about 95 publishers.  So far, Plaintiffs have subpoenaed one of the publishers that Fluent identified.  That publisher stated that it did not have any record of the text messages at issue.

Put bluntly, Plaintiffs are nowhere in identifying who sent the messages, and thus nowhere in proving a TCPA violation, let alone that Fluent can be held responsible for it.  Moreover, the varied fact patterns all suggest that any claim would not be subject to common proof, and thus not appropriate for class certification.

As the Court recognized last time, until the parties know more about who sent the text messages, broad discovery is irrelevant to the claims asserted and unduly burdensome.  That is why the Court rejected Plaintiffs' requests last time for information about all publishers and all of Fluent's activities.  That is not permissible discovery until the parties know what this case is about and who sent the messages.

### Response To Plaintiffs' Issue re Government Investigations

In connection with the last discovery conference, Plaintiffs asserted that Fluent had been subject to a "number of . . . governmental investigations and enforcement actions regarding the same telemarketing practices at issue in the FAC."  As Fluent explained last time, that assertion is unsupported and incorrect.  Fluent has not been the subject of any government investigation that relates to publishers purportedly sending unwanted texts that drive traffic to Fluent's websites.

**SheppardMullin**

Despite the above, Plaintiffs requested all documents that Fluent provided to government investigators, regardless of topic. The Court narrowed the request considerably, to "[a]ll documents previously provided to the Federal Trade Commission in connection with No. 9:23-cv-81045 (S.D. Fl.) . . . that concern the issue of consumers being improperly driven to defendants' websites, either directly or indirectly, by unwanted text messages."

The Court limited its Order in several ways, including to documents about "unwanted text messages" that drove traffic to Fluent's websites. Accordingly, not within the scope of the Court's order was either (i) text messages sent by Fluent or publishers on Fluent's behalf that were sent with consent or permission (or, for that matter, text messages generally without any allegation regarding whether they were sent with permission or not); or (ii) text messages sent by Fluent or others that drove traffic to other advertisers. Instead, the Court's order was limited to the issue presented by Plaintiffs' claims in this case – namely, text messages that were unwanted, purportedly sent without Plaintiffs' consent.

In response to the Court order, Fluent conducted a diligent search and reasonable inquiry, including by reviewing the issues encompassed by the investigations, the CID, the FTC Complaint, the FTC consent order, and so forth, and determined that there were no documents responsive to the Court's limited order.

Plaintiffs now claim this must be impossible, and that Fluent should be held in contempt for purported violation of the Court's order, but Plaintiffs are confusing two separate issues. One issue is unwanted texts driving traffic to Fluent's websites. The other issue is lawfully *sent* texts (so not "unwanted texts") that the FTC nonetheless alleged were deceptive because the content of the text messages themselves purportedly promised things about Fluent's sites that were allegedly untrue. This is clear from the FTC Complaint, which Plaintiffs rely on. **Nowhere** in that Complaint is **anything about** unwanted or unlawfully sent text messages.[1] Instead, the Complaint focuses on whether Fluent (mostly in emails or in website advertisements, but occasionally in texts) made promises or statements about the benefits consumers might receive on its websites in the contents of those marketing messages. This is even clear from the paragraphs that Plaintiffs cite in their letter:

    (1)    Plaintiffs cite paragraphs 46 and 47 of the FTC Complaint, which fall under a heading titled "Deceptive Text Messages." Those paragraphs do not allege anything about unwanted or illegally *sent* text messages, but instead allege that "Defendants' publishers have disseminated text messages that *falsely promis[e]* recipients that they have won a gift card or other reward." The thrust of the FTC's allegation was that the content of the messages, referring to a WalMart gift card or money from "Cash*App" "misleadingly suggest[ed] that [the texts] orginate[d] from the brand associated with the reward." That has nothing to do with unwanted or unlawfully *sent* text messages. And, importantly, Plaintiffs are not alleging in this case that the content of the messages that they received were deceptive or misleading – they have no claim in the case about the content of the messages.

    (2)    Plaintiffs also cite paragraphs 82 and 83 of the FTC Complaint. Again, those paragraphs are about the contents of text messages and changes made to the contents so as to

---

[1]    There is also nothing in the consent order flowing from the FTC Complaint about unwanted or illegally sent text messages.

3

**SheppardMullin**

address alleged deception in the text messages.  Nothing in those paragraphs, or the email quoted in those paragraphs, references unwanted or illegally sent text messages.[2]

In light of the above, the Court must reject Plaintiffs' request to hold Fluent in contempt.  Fluent complied with the Court order, conducted a diligent search and reasonable inquiry, and confirmed that no documents responsive to the Court's order exist.  That should be the end of Plaintiffs' current request for a discovery conference.

Notably, Plaintiffs have not requested a modification of the Court's order, expanding it to include information about topics beyond unwanted texts that drove traffic to Fluent's website.  If Plaintiffs make such a request, Fluent would like to address that issue in full.  Briefly, there should be no expansion of the Court's order because information about the *content* of text messages that was purportedly *deceptive* as to the nature of Fluent's websites and the awards offered thereon, is not relevant to this action, which makes no such similar claims.  Further, expanding the Court's order in this regard would impose extraordinary burdens on Fluent, which would substantially outweigh the probative value of any information that might be produced, particularly given that the parties don't yet know who sent a single one of the text messages at issue.  Accordingly, just as Plaintiffs cannot propound a general document request asking for all information about all text messages, so too can Plaintiffs not ask for all information provided to the FTC that relates to text messages generally.

### Response To Reminder Of Plaintiffs' Letter

In the remainder of Plaintiffs' letter, Plaintiffs raise issues that they say are not the subject of a current dispute, but purportedly may become the subject of a later dispute.  These issues are being resolved or addressed otherwise and so should not be addressed by the Court at this time.  If a dispute arises, and the parties need the Court's help, the parties can address those issues in the normal course.  In that process, Fluent will address those issues and what it sees as inaccuracies in Plaintiffs' submission on those issues.  But Fluent will not burden the Court with that at this time.

Sincerely,

/s/ Jay T. Ramsey (*admitted pro hac vice*)

Jay T. Ramsey
for SHEPPARD, MULLIN, RICHTER & HAMPTON LLP


SMRH:4870-3777-9610.1

---

[2]     Plaintiffs suggest that the content of the text messages in the FTC complaint are similar to the content of some messages received by some of the Plaintiffs, but a simple review shows otherwise.  Other than referencing similar potential rewards, the text is different, the cadence of sentences is different, the website links are different, and so on.