

1515 MARKET STREET, #1100
PHILADELPHIA, PENNSYLVANIA  19102
(267)587-6240

MAX S. MORGAN, ESQUIRE
max.morgan@theweitzfirm.com

January 8, 2024

*Via CM/ECF*
Honorable Barbara C. Moses
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, New York 10007

**Re: Reply in Support of Plaintiffs' Request for Discovery Conference,**
*Pepper v. Fluent, Inc.,* **No. 1:21-cv-06581-JGK (BCM)**

Dear Judge Moses:

1.	**Documents relating to government investigations**. Defendants do not dispute the substantially similar factual underpinnings between the First Amended Complaint ("FAC") and the FTC complaint, including the use of publishers to disseminate the same kinds of deceptive promises for rewards or jobs to consumers, the use of text messages containing hyperlinks, and the use of "pre-landers" or intermediary websites to direct traffic to Defendants' websites. In fact, on January 7, 2024, Defendants produced a spreadsheet showing that some of the **same publishers identified in the FTC complaint**, including Max Bounty and Has Traffic, were involved in the conduct alleged in the FAC. *See* FTC Complaint, attached as Exhibit B to Plaintiffs' Letter Request for Discovery Conference [Dkt. 98].

Instead, Defendants assert that "***Nowhere*** in [the FTC complaint] is ***anything about*** unwanted or unlawfully sent text messages." Letter at 3 [Dkt. 99] (emphasis in original). Thus, they claim that no documents are responsive to the Court's Order. Defendants are flat wrong about the FTC complaint. The FTC complaint alleges that Defendants and their publishers sent text messages that were unwanted and unlawful in numerous places. Paragraph 1 and Count V of the FTC complaint allege violations of the FTC Act, 15 U.S.C. §45(a) and the FTC's Telemarketing Sales Rule (the "TSR"), as amended, 16 C.F.R. Part 310. Count V alleges that Defendants substantially assisted and supported their publishers' violations of the TSR, 16 C.F.R. § 310.4(b)(1)(iii)(B) and 310.4(b)(1)(v), which prohibit initiating outbound calls to any person when that person's phone number is on the "do-not-call" registry maintained by the FTC without an established business relationship or express agreement, and delivering any outbound telephone call that delivers a prerecorded message, without obtaining consent. Paragraphs 2–3 of the FTC complaint allege that Defendants run a deceptive "consent farm," placed calls to numbers on the National Do-Not-Call Registry, and that "the purported consent that Defendants ha[ve] obtained from consumers has been insufficient under the TSR."

Hon. Barbara Moses
January 8, 2024
Page 2

Paragraph 33 of the FTC complaint alleges that "Defendants know or should know that their publishers often use ads that are facially deceptive, ***and make use of other abusive tactics, such as text message spamming and browser hijacking***. Nevertheless, Defendants have failed to prevent their publishers from engaging in this illicit conduct." (emphasis added). Text message spamming is sending large quantities of unwanted text messages. Paragraphs 46–47 and 82–83 of the FTC complaint involve nearly identical text messages to those alleged in the FAC. Thus, the documents produced to the FTC that support the allegations in these paragraphs are reasonably likely to identify responsible publishers and uncover additional relevant information, including Defendants' involvement, knowledge, participation, and contributions to the conduct that harmed Plaintiffs and Class members.  It is clear Defendants continue to improperly withhold documents based on frivolous positions and objections.

Defendants are also wrong about the FTC Consent Order. *See* Def's Letter, footnote 1. The Consent Order enjoins Defendants from "initiating, causing others to initiate, or assisting others in initiating any Outbound Telephone Call (1) that plays or delivers a prerecorded message or (2) to a number on the National Do Not Call Registry without consent. *See* Stipulated Order, Case No. 9:23-cv-81045-AMC (S.D. Fla.) [ECF 6-1].

The relevance of the FTC documents lies in the substantially similar factual underpinnings. Whatever the FTC's theories of liability were, Defendants do not seriously dispute that the documents that were produced to the FTC are relevant to the claims in the FAC because they involve substantially the same conduct, the same patterns and practices, and for some, even the same offenders Defendants just recently disclosed.

As for Plaintiffs' request that Defendants identify the executive referenced in paragraphs 82–83, Defendants do not respond in their letter, and therefore have waived their objection to providing identifying information. There can be no doubt that this executive possesses relevant information and is properly subject to a deposition in this case.

Defendants' attempts to withhold relevant and responsive documents and information grow increasingly dubious and unsupported. Defendants have demonstrated their commitment to conducting "searches" for responsive documents that are unreasonable and self-serving, that purposefully exclude the most likely suspects (such as HasTraffic), and that are based on strained interpretations of discovery requests and court orders. Therefore, Plaintiffs request that Defendants be ordered to produce all documents that they produced to the FTC and Attorneys General that investigated them. Such an order would be easy to comply with (and thus proportional to the needs of the case) because they are already collected, reviewed, stamped and organized. It would avoid further ancillary litigation concerning comparisons between those enforcement actions and Plaintiffs' case. And, any production would still be subject to evidentiary objections that Defendants might assert should Plaintiffs seek to introduce the material at trial, so Defendants would not be prejudiced.

    2.    **<u>Other Matters</u>**. During the meet and confer teleconference, the parties reached agreement on additional matters, a summary of which was included in Plaintiff's letter of January 2, 2024. Defendants agreed to provide the Agreements with Publishers no later than January 5,

2024. Defendants have not fully complied because they have not produced signed contracts, insertion orders, and other relevant documents that would show the effective dates of the contracts, who signed the documents, and whether and when any relationships were entered into, amended, or terminated. Defendants have claimed that blank, template forms are sufficient, but have not supported that assertion. Plaintiffs request that Defendants be ordered to produce the contracts, insertion orders, and other such documents that would include dates and signatures. Plaintiffs also request correspondence relating to the execution, modification, and negotiation of these agreements.

With respect to documents related to Defendants' oversight, handling of complaints, knowledge, approval, and intent, Defendants produced numerous consumer complaints regarding unsolicited text messages similar to those received by Plaintiffs but did not produce any internal correspondence or correspondence with the relevant publishers regarding such complaints. Defendants assert incorrectly that Item #6 in the Court's Order "does not require the production of 'communications with publishers regarding sending of text messages.'" That is an inaccurate reading of the Order. The Order states that

> Defendants shall produce, for attorneys' eyes only, all non-privileged documents reflecting complaints made during the four-year period preceding the filing of this action by or on behalf of consumers concerning unwanted text messages that directly or indirectly drove traffic to defendants' websites, as well as follow-up correspondence between the complainants and defendants *(or between defendants and the relevant publishers)* and documents reflecting resulting settlements, whether formal or informal.
>
> Dkt. 95 (emphasis added).

Defendants have not produced any communications with publishers concerning complaints or internal communications relating to the complaints, even though they produced a myriad of documents showing that Defendants received complaints from consumers who complained of having received unwanted text messages. Neither have they produced any privilege log of withheld documents. Plaintiffs ask that Defendants be ordered to produce all such documents.

Respectfully submitted,

**THE WEITZ FIRM, LLC**

MAX S. MORGAN, ESQUIRE

Cc:    All Counsel of Record (via ECF)